### BAESSLER v. FOSTER.

INTOXICATING LIQUORS—CIVIL-DAMAGE ACT—EVIDENCE OF SALES
　—QUESTIONS OF LAW AND FACT.

　No error was committed by the trial court, in an action for the death of plaintiff's husband, under the law regulating the sale of intoxicating liquors, in submitting to the jury as a question of fact whether liquor was sold by the defendant to the deceased on the night he was killed, where the testimony showed that he was drinking in the defendant's saloon at the time, and the witness and defendant might have seen the deceased from the position in which both were situated, although the facts were disputed.

Error to Newaygo; Davis, J., presiding. Submitted November 10, 1909. (Docket No. 141.) Decided February 3, 1910.

Case by Anna Baessler against Frank Foster, principal, and Albert Brandt and John H. Canavan, sureties, under the civil-damage act. A judgment for plaintiff is reviewed by defendants on writ of error. Affirmed.

*George E. & M. A. Nichols* and *Smedley, Hall & Freeland*, for appellants.

*Cogger & Broomfield*, for appellee.

BLAIR, J. This is an action to recover damages sustained by plaintiff through the death of her husband, alleged to have been caused, or contributed to, by intoxicating drinks sold to him by defendant Foster. Defendant Foster was the keeper of a saloon in White Cloud, Newaygo county, and the other defendants are his bondsmen. The defendant's saloon was on the south side of Wilcox avenue. The building was about 18 feet wide. The first room from the street was the cigar room, separated from the barroom by a partition with two screen doors. The bar was at the east side of the barroom. South of the barroom was a cardroom in which drinks were habitually sold. This cardroom was formed by a partition running across from near the south end of the bar. At the west end of the partition an open archway was cut, from six to eight feet wide and about eight feet high.

Two witnesses testified to sales of liquor to plaintiff's intestate in the morning before his death. Defendant testified that the sales referred to occurred the morning before that stated by these witnesses. A witness testified that between 10 and 11 o'clock of the night in question he saw plaintiff's husband and one Whiteman standing at the bar, each with one hand on the bar and the other on a glass which appeared to contain lager beer. Whiteman and Foster denied this. Whiteman testified that he bought two glasses of beer by himself and took them back into the cardroom, where he gave one of them to Baessler, and they sat there at a table and drank their beer; that he did not tell Foster for whom he was pur-

chasing the extra glass; and that he had been in the habit of buying two glasses of beer and taking them out through the cardroom and out the back way to his home near by. Foster testified: That Baessler came into the saloon between 9 and 10 and called for a drink; that he saw that he was a little intoxicated and refused him and sold him nothing afterwards.

" Then he stepped over by the stove, and talked with some one there, Whiteman or Morris Slade. I paid no attention to what became of him after that. I did not know that he and Whiteman were sitting in the back at the table. * * * One standing behind the bar could not tell who was in the cardroom. I couldn't see into that room at all, only a small corner of it where the stove was. I think the partition extended about five feet west of the bar between these rooms, so one would have to come from behind the bar out to the end of the partition before they could see into the cardroom. I remember of Whiteman coming into the barroom, and said he wanted two glasses of beer, and I drew them for him. I did not know what he was going to do with them. Before that he had got beer for his wife and taken it out of the back door. He lived back of my building. It was a frequent occurrence for him to come into the back door and get a pail of beer and take it home through that way, and he had also taken glasses of beer through that way. After I had refused Baessler the beer, I did not notice him again until I started to lock up. He was then sitting in the cardroom with Mr. Whiteman."

Plaintiff had judgment, and defendant brings the record to this court for review upon two propositions:

*First.* The court erred in practically withdrawing from the jury by the phraseology of his charge the question of fact whether Foster sold any liquor to Baessler in the morning. We think this contention rests upon a palpable misinterpretation of the charge.

*Second.* The court improperly submitted the question of alleged sales on the night of said day. The only branch of defendant's argument in support of this proposition which requires consideration is the contention that the court erred in submitting to the jury as a question of

fact whether defendant could see Whiteman and Baessler in the cardroom. There was an abundance of evidence, if the jury gave credit to the witnesses furnishing it, to justify an inference that defendant Foster knew that Whiteman and Baessler were in the cardroom, and we think the question whether a person behind the bar at the north end could see Whiteman at the card table was also an open question for the jury. Defendant's witness Friedburg testified: That he and the witness Cannon were in the saloon talking with Foster for 20 minutes or half an hour between 9 and 10—

"We were at the north end of the bar. I saw Baessler sitting by a table in the cardroom. The barroom was separated from the cardroom by a partition with an archway cut through it. The archway is on the west side of the building. A stove was near the archway. I looked by the stove and into the cardroom, and saw Mr. Baessler and Mr. Whiteman sitting in there at a table. I think they could be seen from the north end of the bar. I don't know what they were doing. I saw two glasses standing on the table. * * * The barroom runs north and south through the building. The bar was on the east side of the saloon. Cannon and I were standing pretty well up towards the north end of the bar. From where we were we could see the table and any one sitting down there. I don't remember of Baessler or Whiteman getting up from the table while we were in there. The archway went clear to the ceiling. I should think the arch was about eight feet wide east and west."

The witness Cannon testified: That he was at the saloon—

"Between 9 o'clock or a little after. I saw Baessler in there. He was sitting at a table in the back room with Whiteman. There was no one else in the room with them. I was in the saloon for probably half an hour. I don't think that he came out of the back room while I was there. They were sitting at the table all the time. I don't know what they were doing. Baessler's back was to me. I couldn't tell whether they were drinking or not. Baessler did not come into the barroom while I was there. They were sitting in this back room when I first saw them,

and remained there at the table until I left.  *  *  *  Ed.
Friedburg and I went in together.   I had met him on the
street.   *  *  *   Foster was behind the bar.   There was
no one else behind the bar.   I did not go into the back
room at all.   There is a big arch cut through between the
barroom and the cardroom, and they ( Baessler and White-
man ) sat just through the archway.   This arch is about
six or eight feet wide, and cut round, as I remember.   It
does not go up to the ceiling.   I should think it was eight
or nine feet high, making a space through the archway of
six. or eight feet wide and eight to nine feet high.   That is
open, so you can see into the rear room.   I could see them
from the front of the bar.   I am sure it was Baessler and
Whiteman in there.   I didn't look in there very much,
because I didn't pay any attention.   If it hadn't been that
the man was killed, I would not have remembered it.   I
did not see Whiteman or Baessler come out of the back
room while I was there.   Whiteman was facing east and
Baessler to the south.   I could not see Baessler's face.
His back was to me.   I know Mr. Whiteman had a glass
in front of him.   I couldn't see what Baessler had."

If, as this testimony indicates, Baessler and Whiteman
" *sat just through the archway* " and witnesses at the
north end of the bar but on the front or west side could
see Whiteman at the west side of the card table "facing
east" and Baessler at the north side of the card table fac-
ing "to the south," we think the inference that Foster
behind the bar at the north end could at least see White-
man is a reasonable one.   It is apparent that, if the parti-
tion at the south of the bar extended out five feet to the west
and the table at which Whiteman and Baessler sat was
entirely behind the partition, Cannon and Friedburg could
not have seen them at all.

We find no reversible errors in the charge, and the
judgment is affirmed.

MONTGOMERY, C. J., and OSTRANDER, HOOKER, and
BROOKE, JJ., concurred.