JUCKNIESS *v.* SUPINGER.
APPEAL OF DORAN.

1. INTOXICATING LIQUORS—TAVERNKEEPER'S BOND—UNLAWFUL SALE.
In order to impose liability under statutory bond of tavern-keeper it must be shown that there was an unlawful selling of liquor to person who caused injury to plaintiff (Act No. 8, § 22, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937).

2. SAME—UNLAWFUL SALE—EVIDENCE.
On tavernkeeper's appeal from verdict and judgment for plaintiff who was personally injured and who suffered other damages in collision with a car, although there is evidence showing such car was driven by person who had been a patron in appellant's tavern some 3 or 4 hours before the accident, record fails to present testimony that such patron was in an intoxicated condition at time intoxicating liquor was sold or furnished to him (Act No. 8, § 22, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937).

Appeal from Midland; Hartrick (George B.), J., presiding. Submitted October 8, 1948. (Docket No. 75, Calendar No. 44,190.) Decided February 28, 1949.

Case by Paul Juckniess against Charles B. Supinger and others for personal injuries, loss of companionship and services of wife and for expenses incurred caused when his automobile was hit by one

REFERENCES FOR POINTS IN HEADNOTES
[1] 30 Am. Jur., Intoxicating Liquors, §§ 612, 614, 629, 632.
[1] Right of action at common law for damages sustained by plaintiff in consequence of sale of intoxicating liquor or habit-forming drugs to another. 130 A.L.R. 352.
[2] 30 Am. Jur., Intoxicating Liquors, § 639.

driven by Charles B. Supinger while under the influence of intoxicating liquors. Case discontinued as to Ohio Casualty Insurance Company and Western Casualty & Surety Company. Verdict and judgment for plaintiff against the other defendants. Defendant O. B. Doran, individually and doing business as Mecotta Tavern, appeals. Judgment vacated as to appellant.

*James M. Pearson,* for plaintiff.

*Rood & Sheldon,* for defendant Doran.

BUSHNELL, J. On the evening of March 16, 1946, sometime between 7:30 and 9 o'clock, according to witness George Athey, an automobile without lights turned into US-10 at its junction with the Bay City road (M-20), where Athey had stopped for a red light, and proceeded ahead of him towards Midland, Michigan. It narrowly avoided colliding with the Athey car at the intersection and then kept weaving across the road until it was out of sight. No other car passed Athey and a little later, about one-half mile distant from the intersection, a car was found on the wrong side of the road, having collided with another automobile. According to a police officer who was called at 8:39 p.m., he found in the first car defendant Charles B. Supinger sitting upright behind the wheel and his wife in a partly reclining position beside him, and in the other car, plaintiff Paul Juckniess and his wife were in the front seat and their minor daughter, Margaret Catherine Juckniess was in the back seat. All of the parties were severely injured, Mrs. Juckniess and Mrs. Supinger dying as a result of their injuries.

Juckniess sought recovery individually and jointly against Supinger, Carl C. Raymond and Harold J. Raymond, individually and as copartners and do-

ing business as Daylight Tavern, and O. B. Doran, individually and doing business as Mecotta Tavern, and their respective sureties, Ohio Casualty Insurance Company and Western Casualty & Surety Company, foreign corporations. This action, so far as the respective tavernkeepers and their sureties are concerned, was based upon a statutory liability imposed by Act No. 8, § 22, Pub. Acts 1933 (Ex. Sess.) (Stat. Ann. § 18.993), as amended by Act No. 281, Pub. Acts 1937* (Comp. Laws Supp. 1940, § 9209–37, Stat. Ann. 1947 Cum. Supp. § 18.993), which reads in part as follows:

"Every wife, husband, child, parent, guardian or other persons who shall be injured in person or property, means of support or otherwise, by an intoxicated person by reason of the unlawful selling, giving or furnishing to any such persons any intoxicating liquor, shall have a right of action in his or her name against the person who shall by such selling or giving of any such liquor have caused or contributed to the intoxication of said person or persons or who shall have caused or contributed to any such injury, and the principal and sureties to any bond given under this law shall be liable, severally and jointly, with the person or persons selling, giving or furnishing any spirituous, intoxicating or malt liquors as aforesaid, and in any action provided for in this section, the plaintiff shall have the right to recover actual and exemplary damages in such sum.. not less than 50 dollars in each case as the court or jury may determine."

The preceding portion of the same section requires retailers of beer "and/or" wine for consumption on the premises to furnish bond in the sum of not less than $3,000 nor more than $5,000, in the discretion of the liquor control commission.

At the close of plaintiff's proofs, a motion for a

---

* 3 Comp. Laws 1948, § 436.22.—Reporter.

directed verdict for defendant tavernkeepers and
their bondsmen was made and denied. At the close
of defendants' proofs, a motion was made to require
plaintiff to reduce the *ad damnum* clause in his dec-
laration from $50,000 to $3,000, the latter being the
penalty in the surety bonds of the respective tavern-
keepers, on the theory that plaintiff's action, being
joint, satisfaction by one defendant would discharge
the action, and that there is no provision in the stat-
ute for severing in an action *ex delicto* or for enter-
ing a judgment in one sum against one defendant
and in a greater sum against another.

Plaintiff, after considerable discussion, was per-
mitted to discontinue as against the two surety com-
panies upon payment of their taxable costs. A sub-
sequent motion to dismiss as to defendant Mecotta
Tavern was denied. The matter was submitted to
the jury, which returned a verdict in favor of plain-
tiff against defendants Raymond, doing business as
Daylight Tavern, and defendant Doran, doing busi-
ness as Mecotta Tavern, jointly, in the sum of
$18,000. After denial of a motion for a new trial,
defendant Doran, doing business as Mecotta Tavern,
appealed.

Sometime between 12:30 and 1:30 o'clock, p.m.,
on the day of the accident in question, Supinger, his
wife, Vernon Joley, and a man identified as Chap-
man, went to the Mecotta Tavern, about two miles
from Midland, where, according to Joley, all drank
beer, and then returned to Midland to Joley's place
of employment, where they left him. At this time
Chapman was driving the Supinger car. Joley next
saw Supinger at the Daylight Tavern about 4:30
p.m., where more beer was consumed, and he again
left the party about 6:30 p.m.

It is to be noted that the Mecotta Tavern was the
one first visited by Supinger, his wife, Chapman and
Joley, and where they remained, according to Joley's

testimony, for not more than 2½ hours, and left at least 4½ hours prior to the accident. The testimony adduced at the trial does not show more than 4 glasses of beer consumed by Supinger at the Mecotta Tavern. There is no dispute in the testimony about the fact that when Supinger arrived at the Mecotta Tavern he was sober. Supinger testified that he ate his noon meal before he left home and not at the Mecotta Tavern. Other witnesses testified that at least Joley had dinner at the Mecotta Tavern, and that others in the party had food. A waitress in this tavern, Martha McConnell, testified that only 3 glasses of beer were served to each member of the Supinger party, and that there was no indication at the time Supinger left the tavern that he was under the influence of intoxicating liquor. The husband of this waitress and another witness, a cook at the tavern, testified to the same effect. Supinger remembered leaving the Mecotta Tavern in the car with Chapman driving. He also remembered visiting the garage at Midland en route, but did not remember "getting to the Daylight Tavern." Nor did he remember anything about the accident. He admitted drinking 4 glasses of beer while at Mecotta Tavern and attributed his loss of memory to the injuries suffered in the accident. He said on cross-examination that he thought his wife was driving when he left the Mecotta Tavern, and knew he was not driving the car because he did not drive at all on the day in question. Supinger was unconscious for 5 days after the accident and did not know about his wife's death or burial until he recovered consciousness.

Eva Mae Sweers, a witness for plaintiff, testified as to Supinger's actions at the Daylight Tavern between 4 and 4:30 p.m., although she could not say he was intoxicated at the time. The mother of this witness, while unwilling to say that Supinger was drunk, did say that he was at the time under the in-

fluence of liquor. Another witness for plaintiff, who saw Supinger in the parking lot near the Daylight Tavern, testified that he staggered and fell before getting into his car, it not being apparent from this testimony who was driving the car when it left the Daylight Tavern parking lot. Still another witness, a man who had known Supinger for several years and who was in the Daylight Tavern at the time, said that Supinger left the dance floor and asked him to dance with him.

In denying a motion for new trial the trial judge, on the question of great weight of evidence, stated that he was still of the opinion that he expressed when he denied the motion for verdict *non obstante veredicto,* and that "there was evidence in the case sufficient to make a factual one for jury determination."

Appellee argues recovery may be had under the statute when the liquor sold or furnished caused or contributed to the intoxication of the person who caused the injury. The statute uses the phrase, "such selling," and therefore refers back to the phrase "unlawful selling." See, in this connection, *Hylo* v. *Michigan Surety Co.,* 322 Mich. 568.

Thus the statutory liability in the instant case turns upon the words "unlawful selling." The statute heretofore cited and quoted in part requires in a preceding paragraph the execution and delivery to the liquor control commission of a bond as a condition precedent to the approval of granting a license, among the conditions of which are that a retailer of beer "will not directly or indirectly  *  *  *  sell, furnish, give or deliver any spirituous, malt, brewed, fermented or vinous liquor, any mixed liquor or any mixture or compound a part of which is spirituous, malt, brewed, fermented or vinous liquor  *  *  * to any adult person whatever who is at the time intoxicated, and that he will pay all damages actual

and exemplary that may be adjudged to any person or persons for injuries inflicted upon him or them either in person or property or means of support or otherwise, by reason of his selling, furnishing, giving or delivering any such liquors."

To support the verdict of the jury, it is therefore necessary that there be proof of an unlawful selling which, in this instance, would be that Supinger was sold liquor by Doran doing business as Mecotta Tavern while Supinger was intoxicated; otherwise the instant selling to Supinger could not be deemed unlawful. There is no testimony in this record which would justify submitting as an issue of fact to a jury the question as to whether Charles B. Supinger, while in the Mecotta Tavern where intoxicating liquor was sold or furnished to him, was in an intoxicated condition.

The judgment entered upon the jury's verdict as to Doran, doing business as Mecotta Tavern, must therefore be vacated.

Because of this, and since Doran is the only appellant, it is unnecessary to consider the other questions submitted.

The judgment as to Doran is vacated, with costs to appellant.

SHARPE, C. J., and BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.