GRINSTEAD v. ANSCER.

1. AUTOMOBILES—DEATH—PRESUMPTION AS TO DRIVER.
   Owner of car is presumed to have been driving, where he and
   2 others were in the car at time of accident resulting fatally
   to .plaintiff's and defendant's decedents and there is no testi-
   mony as to who was driving at the time of the accident.

2. INTOXICATING LIQUORS—CIVIL DAMAGE ACT—EVIDENCE.
   .A plaintiff in an action under the civil damage act may recover
   on a mere preponderance of the evidence, and circumstantial,
   as well as direct, evidence may be sufficient, since, although
   penal in nature, such an action is not a criminal proceeding
   and it is not necessary that the evidence should exclude all
   reasonable doubt (CLS 1956, § 436.22; CL 1948, § 436.29).

3. SAME—CIVIL DAMAGE ACT—EVIDENCE—PROXIMATE CAUSE.
   The evidence adduced in an action under the civil damage act must
   afford a reasonably certain basis from which the jury may find
   compensation for the loss suffered from the injury proved and
   that it was due to the unlawful sale of intoxicating liquor
   (CLS 1956, § 436.22; CL 1948, § 436.29).

4. SAME—CIVIL DAMAGE ACT—QUESTIONS FOR JURY.
   It is the function of a jury in an action under the civil damage
   act to determine whether there was a sale, gift or furnishing of
   liquor by defendant, whether intoxication was produced by such
   liquor and whether such liquor caused or contributed to the in-
   jury complained of (CLS 1956, § 436.22; CL 1948, § 436.29).

5. EVIDENCE—CIRCUMSTANTIAL—DIRECT—WEIGHT OF EVIDENCE.
   Circumstantial evidence in support of or against a proposition is
   equally competent with direct and, as against each other, their
   relative convincing power is for the jury.

6. TRIAL—MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT.
   Testimony is to be construed in plaintiff's favor in determining
   whether a motion for judgment notwithstanding the verdict
   should be granted.

---

REFERENCES FOR POINTS IN HEADNOTES
[2-4] 30 Am Jur, Intoxicating Liquors § 561.
[5] 20 Am Jur, Evidence § 271.
[6] 30A Am Jur, Judgments § 300.
[7] 30 Am Jur, Intoxicating Liquors § 556.
[8] 30 Am Jur, Intoxicating Liquors § 562.

7. INTOXICATING LIQUORS—CIVIL DAMAGE ACT—INSTRUCTION—PROX-
IMATE CAUSE.

   Instruction in action under civil damage act that for plaintiff wid-
   ow to recover the jury must find from a preponderance of the
   evidence that intoxicating liquor was sold to one of the occu-
   pants of car, involved in accident fatal to plaintiff's husband,
   at a time when such person was intoxicated and that his intoxi-
   cation brought about the accident which resulted in the death
   of her husband, was proper (CLS 1956, § 436.22; CL 1948,
   § 436.29).

8. SAME — CIVIL DAMAGE ACT — DAMAGES — INSTRUCTION — PAR-
   TIAL NEW TRIAL.

   Plaintiff-appellant's claim in action under civil damage act that
   court committed error in its charge to jury in regard to dam-
   ages *held*, without merit, hence, motion for new trial, limited to
   matter of damages only is denied (CLS 1956, § 436.22; CL
   1948, § 436.29).

Appeal from Kent; Verdier (Leonard D.), J.
Submitted April 9, 1958. (Docket No. 22, Calendar
No. 47,257.) Decided September 9, 1958.

Case by Mary Ann Grinstead against Clifford A.
Anscer, doing business as Oasis Bar, under the civil
damage act because of husband's death while rid-
ing with intoxicated driver of automobile. Judg-
ment for defendant *non obstante veredicto*. Plain-
tiff appeals. Reversed and remanded.

*Alexander, Cholette, Buchanan, Perkins & Conklin*
(*Don V. Souter*, of counsel), for plaintiff.

*Jennings, Fraser, Parsons & Trebilcock* and *Alla-
ben, Davids & Massie*, for defendant.

KELLY, J. Plaintiff (wife) obtained a jury ver-
dict of $5,084 sustaining her claim that her husband's
death was caused by defendant's violation of the
Michigan liquor act (CLS 1956, § 436.22 [Stat Ann
1957 Rev § 18.993]) prohibiting the furnishing or

sale of liquor to an intoxicated person.* The trial court, upon defendant's motion, entered judgment for defendant *non obstante veredicto*.

April 18, 1956, plaintiff's deceased husband, a sailor (in uniform), met John Carroll, a marine (in uniform), and Garrette DeBack, a police officer (in plain clothes), at a Grand Rapids bar, which was known as Vinney's Bar. Carroll had been there since 8:30 or 9 o'clock that evening and had been in and out of the bar about 3 times, each time having 1 or 2 beers. DeBack came in about 9:30 and plaintiff's husband at about 11 o'clock. Plaintiff's husband had 4 or 5 eight-ounce draft beers and DeBack drank pop for a while and then had 4 or 5 gin and squirts. All 3 left Vinney's Bar about 12 o'clock and proceeded to defendant's bar, known as the Oasis. The 3 men, Grinstead, Carroll and DeBack, remained at defendant's bar until about 1:45 a.m. (April 19th), at which time they left said bar and entered an automobile owned by Carroll. As they drove north on Division street they passed a Grand Rapids traffic officer, driving in the opposite direction, who turned and followed them but did not catch up with them before the accident. This officer testified they were traveling more than 60 miles an hour.

The Carroll car struck a light pole, skidded between the sidewalk and curb for a distance of 104 feet, struck another light pole and then struck the abutment of an underpass. The total skid marks were more than 300 feet. All 3 men were thrown out of the car and Grinstead and DeBack were killed. There is no testimony as to who was driving the car at the time of the accident, but it was Carroll's car and the presumption that he was the driver was not rebutted.

* CL 1948, § 436.29 (Stat Ann § 18.1000).

Carroll's body was found 30 feet from the automobile. No further reference is made in the record before us in regard to Carroll, other than that he was taken from the scene of the accident to the hospital.

Blood was drawn from the hearts of Grinstead and DeBack, and the alcoholic content was revealed to be .19% for Grinstead and .22% for DeBack. Dr. Clarence Muehlberger testified that a person with more than .15% alcoholic content would definitely be intoxicated.

There is no direct proof that defendant, or his agents, or employees, sold, gave, or furnished intoxicants to the presumed driver of the car (marine Carroll).

The jury verdict could only be justified by the presence of sufficient circumstantial evidence.

While at defendant's Oasis all 3 were seated at the bar. Two of defendant's employees, namely, the manager and bartender, Frank Bogard, and Bennie Durkowski (also a bartender) were working behind the bar.

Bogard testified he did not see the sailor and the marine or the policeman at the bar, and stated his main duty was to take care of orders brought to him by waitresses who served patrons at the tables.

Bartender Durkowski did not testify, and the only reference to him in the record is Bogard's testimony, as follows: "I do not know where he is now, I understand he is working for a construction company."

A waitress, Valerie Durham, stated she saw all 3 men seated at the bar. She testified:

"*Q.* Did you notice anything in front of them?

"*A.* There were glasses there.

"*Q.* Was there anyone behind the bar at that time?

"*A.* Yes, 2 men.

"*Q.* Was there anyone near them doing anything with them?

"*A.* At one time I saw a man giving them change.

"*Q.* Who was that man?

"*A.* Frank.

"*Q.* Who is Frank?

"*A.* The manager now (Frank Bogard).

"*Q.* Did you notice the men following that time, during the evening at any time?

"*A.* Once when they went to the rest room.

"*Q.* Did you have any reason to notice them particularly any time after that?

"*A.* Not particularly.

"*Q.* Did you notice them any time after that?

"*A.* Well just as you glance at a person.

"*Q.* Whenever you glanced, did they have anything in front of them?

"*A.* That I wouldn't know all the time, sometimes.

"*Q.* What did they have in front of them at times?

"*A.* I didn't at all times happen to look at what they were drinking. I didn't see them very much, really.

"*Q.* Did you see them up to the time they left?

"*A.* I don't know when they left.

"*Q.* You are not sure of that?

"*A.* That is right.

"*Q.* Sometimes you say. What was in front of them sometimes?

"*A.* Glasses. What they contained, I don't know."

Waitress Durham admitted that on the next night after the automobile accident she was informed by the owner (Anscer) and the manager (Bogard) "That we shouldn't say anything about (the accident), not to talk about it, not to tell anybody we had seen the men."

In this regard Anscer testified that the night the marine, the sailor, and the policeman, came to his place of business he was not there, as he "was not in attendance and was not working the place." The following question was asked Anscer on direct examination by his attorney:

"*Q.* Mr. Anscer, did you ever instruct any of your employees that they were to say nothing at all about the offense that has been described in this case?

"*A.* I don't remember saying that myself."

On cross-examination Anscer testified:

"*Q.* Mr. Anscer, you say you don't remember. So it is possible you might have and forgotten?

"*A.* There may be one point. A marine came in and questioned me—I don't know how long after the accident—and it may be I said you don't have to answer that marine. That is as far as it could have been."

Waitress Popma testified that she saw the marine in the bar, but not the sailor; that he passed her once on the way to the men's room and she noticed nothing unusual in his walk and that there was no loud talk. On cross-examination she testified:

"*Q.* You still work for the Oasis Bar, don't you?

"*A.* Yes, I do.

"*Q.* Do you remember being told that you weren't, I don't remember the exact words, but something to the effect not to admit they were in there?

"*A.* No. The only thing I was told there was a marine investigating and I was told I didn't have to talk to him because his investigation was not official.

"*Q.* There was nothing else said?

"*A.* No.

"*Q.* You say you don't recall the sailor or anything else?

"*A.* The reason I noticed the marine he was the first man at the bar and because he spoke to me when he passed.

"*Q.* Do you know how long he was in there?

"*A.* No, I really don't know what time he came in. I know he was not there at 1:30 when the music stopped.

"*Q.* You didn't see him drinking anything at all?

"*A.* No.

"*Q.* You don't know how long he was in there and you didn't see him drinking anything?

"*A.* No.

"*Q.* Nothing in front of him?

"*A.* Saw a couple of glasses. I didn't notice. I noticed him sitting at the bar. He had his back to me."

Grand Rapids police department's patrolman Bolhouse stated that after finishing duty he went to defendant's bar about 1 a.m. He testified:

"I walked in, I was standing at the bar and DeBack came up in back of me, tapped me on the shoulder and I talked to him a few minutes. He had old clothes on.

"*Q.* Did he say anything to you?

"*A.* Yes. He said he was out with a crazy marine and sailor. They were really whooping it up.

"*Q.* When he said that, did that direct your attention to anybody?

"*A.* Yes, a marine in dress uniform and a sailor in dress blues.

"*Q.* Where were they?

"*A.* On the other end of the bar, back of the bar.

"*Q.* What were they doing?

"*A.* They were talking loud and moving around from table to table.

"*Q.* Were they carrying anything, either the sailor or the marine?

"*A.* The marine was the closest to DeBack and he was carrying a bottle of beer. I couldn't tell for sure what the sailor was carrying.

"*Q.* Did you notice anything about their manner?

"*A.* They were loud and staggered quite a bit, especially the marine.

"*Q.* What about DeBack?

"*A.* Well his speech was really slurred, he staggered, he didn't act like he would normally act if he wasn't under the influence of intoxicating liquor."

On cross-examination Bolhouse stated:

"*Q.* At that time you say officer DeBack offered to buy you a beer but you didn't see any one of these 3 gentlemen purchase any beer or whiskey or anything else yourself, did you?

"*A.* No, I didn't.

"*Q.* None of them, while you were there for 45 minutes, did you see purchase any alcoholic beverages?

"*A.* No.

"*Q.* So you can't tell from your own knowledge and testimony whether what they had in their hands was a gift of someone else there? Could have been a gift from some friend?

"*A.* Could have been.

"*Q.* You didn't see them purchase anything in the Oasis Bar during the time you were there?

"*A.* That is right."

Plaintiff's witness, Gene Goforth, a married man with a family, said he stopped about 11:15 p.m. at Vinney's Bar after finishing work at St. Mary's hospital and that he saw the 3 men seated at the bar drinking; that he again saw these men at the Oasis shortly after 1 o'clock. He testified:

"*Q.* Did you notice what the men were doing at the Oasis?

"*A.* Well, they were having a few.

"*Q.* Could you describe their condition?

"*A.* Well, they were having a good time. I would say enjoying themselves.

"*Q.* Could you describe your condition?

"*A.* Well, I was feeling all right.

"*Q.* What do you mean by feeling all right?

"*A.* Well, I had a few myself.

"*Q.* Could you describe those men with relation to you?

"*A.* Well, I would say they were feeling better than me.

"*Q.* Did you observe the men leave the Oasis?

"*A.* Well, I know approximately what time they left.

"*Q.* About what time did they leave?

"*A.* It was near a quarter of 2.

"*Q.* What did you do?

"*A.* Well, I went out myself shortly after that.

"*Q.* When did you see the men again?

"*A.* At the scene of the accident.

"*Q.* How soon after you had left the Oasis was this?

"*A.* This was about 5 minutes after I left."

On cross-examination Goforth testified:

"*Q.* And they were in normal condition?

"*A.* Well, they were feeling pretty good, I would say.

"*Q.* Well, is there anything abnormal about that?

"*A.* Well, I wouldn't say it was so abnormal, but they had been drinking.

"*Q.* But you are not going to say they were intoxicated?

"*A.* I would say they were having a good time and feeling no pain, as I would describe it.

"*Q.* That is the way you would describe it?

"*A.* Yes.

"*The Court:* You say feeling no pain?

"*A.* Yes."

The question presented is: Is this circumstantial evidence sufficient to submit to the jury the issue of whether defendant gave, sold, or furnished intoxicants to Carroll while he was in an intoxicated condition?

In 33 CJ, Intoxicating Liquors, §§ 330, 338, pp 651, 653, we find the following:

"Although an action under the civil damage laws is penal in its nature, and hence the allegations of the complaint must be fully proved, it is not a criminal proceeding, and therefore it is not necessary

that the evidence should exclude all reasonable doubt. Plaintiff may recover on a mere preponderance of the evidence, and circumstantial, as well as direct, evidence may be sufficient. In civil damage cases for injury from the sale of intoxicating liquors, as in ordinary damage suits, the evidence must afford a basis, reasonably certain, from which the jury may find compensation for the loss suffered from the injury proved. * * *

"As in other civil actions, in actions under civil damage laws, questions of law are for the determination of the court, while questions of fact or mixed law and fact are ordinarily to be determined by the jury under proper instructions from the court. In such an action, it is for the jury to determine: Whether there was a sale, gift, or furnishing of liquor by defendant; whether intoxication was produced by the liquor so sold or furnished; whether the liquor sold or furnished by defendant caused or contributed to the injury complained of."

In *Cebulak* v. *Lewis,* 320 Mich 710 (5 ALR2d 186), we held:

"Circumstantial evidence in support of or against a proposition is equally competent with direct and, as against each other, their relative convincing power is for the jury." (Syllabus.)

In *Cuttle* v. *Concordia Mutual Fire Ins. Co.,* 295 Mich 514, this Court held:

"Circumstantial evidence in support of or against a proposition is equally competent with direct." (Syllabus.)

In *Baessler* v. *Foster,* 159 Mich 513, we held:

"No error was committed by the trial court, in an action for the death of plaintiff's husband, under the law regulating the sale of intoxicating liquors, in submitting to the jury as a question of fact whether liquor was sold by the defendant to the deceased on

the night he was killed, where the testimony showed that he was drinking in the defendant's saloon at the time, and the witness and defendant might have seen the deceased from the position in which both were situated, although the facts were disputed." (Syllabus.)

This Court in *Maldonado* v. *Claud's Incorporated*, 347 Mich 395, considered the question of whether there was competent evidence to show an illegal sale, in a case similar to the one now before us. In the *Maldonado Case* we made a statement which applies to the present case (p 401):

"While the testimony in this respect was such as might well raise doubts with reference to the matter, it was for the jury to determine the weight to be given to it. In determining whether the motion for judgments notwithstanding the verdicts was properly granted, we have in mind the generally accepted rule that the testimony is to be construed in plaintiff's favor."

The trial court properly instructed the jury:

"Now I realize that the testimony of the witnesses on each side of this case differs, and because of that fact you are the judges of the credibility of the witnesses, and by that I mean their right to be believed. You alone are the judges of that.

"If you find by a preponderance of the evidence that liquor, intoxicating liquor was sold to the one of these 3 men that drove this car at a time when he was intoxicated and that his intoxication brought about the accident which resulted in the death of plaintiff's husband, then your verdict will be for the plaintiff; otherwise your verdict will be no cause of action."

We find no merit in appellant's contention that the court committed error in its charge to the jury in regard to damages and deny appellant's request that

"a new trial be granted on the grounds of damages only."

Reversed and remanded to the trial court for entry of judgment upon the verdict of the jury. Costs to appellant.

DETHMERS, C. J., and CARR, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.