RIZZO v KRETSCHMER

OPINION OF THE COURT

1. INTOXICATING LIQUORS—DRAMSHOP ACT—PROOF.
   The dramshop act requires proof of an illegal sale (MCLA 436.22).

2. INTOXICATING LIQUORS—DRAMSHOP ACT—BURDEN OF PROOF.
   An action based upon the dramshop act places the burden on the plaintiff to prove that (1) the person was intoxicated, (2) the defendant served such an intoxicated person, and (3) such intoxication caused the accident (MCLA 436.22).

3. JUDGMENT—SUMMARY JUDGMENT—ISSUE OF FACT—COURT RULES.
   Court rule providing for summary judgment requires there be trial unless "there is no genuine issue as to any material fact" and the courts are liberal in finding that a "genuine issue" does indeed exist; a court will "give the benefit of any reasonable doubt to the opposing party" and "the court must be satisfied that it is impossible for the claim or defense to be supported at trial *because of some deficiency which cannot be overcome"* (GCR 1963, 117.2).

4. JUDGMENT—SUMMARY JUDGMENT—ANSWER TO MOTION—INTOXICATING LIQUORS—DRAMSHOP ACT—PLEADING—AFFIDAVITS.
   Trial judge should have taken plaintiffs' answer to defendants' motions for summary judgment in an action under the dramshop act, which answer promised to "produce competent medical evidence" that the driver of an automobile "was under the influence of intoxicating beverages after drinking four (4) beers", into consideration in reaching his conclusion on the motions for summary judgment, because plaintiffs' answer could be considered included under then appropriate "pleadings" or even as a substitute for an affidavit as affidavits are not required from the opposing party (MCLA 436.22; GCR 1963, 117.3).

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 5, 7, 10] 45 Am Jur 2d, Intoxicating Liquors § 561 *et seq.*
[3, 4, 6, 8, 9] No reference.

5. Intoxicating Liquors—Dramshop Act—Proof—Issue of Fact.

Proof of a particular amount of intoxicating liquor consumed may be sufficient to raise a "genuine issue" of fact as to whether there was an unlawful sale in an action under the dramshop act (MCLA 436.22; GCR 1963, 117.2).

6. Judgment—Summary Judgment—Affidavit—Depositions—Admission—Evidence—Pleading—Court Rules.

Plaintiffs' offer to produce medical evidence cannot be totally characterized as an affidavit, deposition, admission, or documentary evidence under the court rule providing for summary judgment; however, it is data in the form of the permitted category of a "pleading" or in lieu of an affidavit which is not required of an opposing party; it is supportive of plaintiffs' claim and should have been considered by the trial judge in ruling on defendants' motions for summary judgment (GCR 1963, 117.3).

7. Judgment—Summary Judgment—Depositions—Issue of Fact—Dramshop Act—Evidence—Intoxicating Liquors.

Deposition of a police officer that the driver of an automobile was under the influence of alcohol "to a point" might be sufficient to raise the "genuine issue as to any material fact" necessary to defeat defendants' motions for summary judgment in an action under the dramshop act; certainly this evidence in combination with evidence as to the amount of alcohol consumed plus promised competent medical testimony that such amount was intoxicating does raise such a "genuine issue" (MCLA 436.22; GCR 1963, 117.2).

8. Judgment—Summary Judgment—Interrogatories—Depositions—Issue of Fact—Trial—Proof.

The office of a motion for summary judgment by a defendant after interrogatories and depositions is to test whether plaintiff's appropriate data raises a "genuine issue as to any material fact" on which defendant challenges him; if plaintiff's data does raise such a "genuine issue" he may proceed to trial and his proofs, win or lose, and if plaintiff's data fails to raise such a "genuine issue" defendant is entitled to a summary judgment (GCR 1963, 117.2).

Dissenting Opinion

T. E. Brennan and M. S. Coleman, JJ.

9. Judgment—Summary Judgment—Discretion.

*Exercises of judicial discretion, such as the grant of summary*

*judgment, should be undertaken with great care and delibera-
tion as litigants have a right to present and be judged on well-
founded issues (GCR 1963, 117).*

10. INTOXICATING LIQUORS—DRAMSHOP ACT—PROOF.

*Statutory definitions and precedential interpretations of the
dramshop act require the plaintiff to prove, in part, that the
defendant bar served an individual while intoxicated (MCLA
436.22).*

Appeal from Court of Appeals, Division 1, V. J.
Brennan, P. J., and McGregor and Bronson, JJ.,
affirming Wayne, Thomas J. Foley, J. Submitted
March 7, 1973. (No. 7 March Term 1973, Docket
No. 54,200.) Decided May 25, 1973.

Complaint by Emma Rizzo, executrix of the
estate of Joseph Rizzo, deceased, and others
against Gerald W. Kretschmer, Joseph Astrolfi and
Edward J. Plonka under the dramshop act for
damages for the death of plaintiffs' decedent. Sum-
mary judgments for defendants. Plaintiffs appealed
to the Court of Appeals. Affirmed. Plaintiffs ap-
peal. Reversed and remanded for further proceed-
ings.

*Lopatin, Miller, Binders & Freedman (Michael
H. Feiler,* of counsel), for plaintiffs.

*Sullivan, Sullivan, Ranger & Ward,* for defend-
ant Kretschmer.

*Baun & Barton,* for defendant Astrolfi.

*Plunkett, Cooney, Rutt & Peacock* (by *John A.
Demoss* and *Sarah Wildgen Sweet),* for defendant
Plonka.

WILLIAMS, J. There are three issues in this case.
The first is what must a defendant, on a motion

for summary judgment after original pleadings, interrogatories and depositions but before trial testimony, prove to prevent a case from going to trial. The second is what data at this stage of the proceedings may enter in the proof of whether there was a "genuine issue as to any material fact" under GCR 1963, 117.2(3) and GCR 1963, 117.3. The third issue is whether the appropriate data in this case raised a "genuine issue."

Both defendants and plaintiffs based their arguments on whether two depositions were adequate to raise a "genuine issue" under the requirements of the dramshop act.[1] While both the defendants and the plaintiffs and the trial judge viewed the proofs from two depositions as dispositive, as we analyze the case this Court does not need to reach that question as there are complementary data, which in combination with the two depositions more assuredly constitutes adequate proof of a "genuine issue" permitting the plaintiffs to proceed to their trial proofs. A description of these two depositions follows. The first deposition showed the alleged negligent driver consumed four bottles of beer prior to and in the first defendant's establishment and subsequently drinking about three screwdrivers in the last two defendants' establishments. The second deposition by an officer policing the subsequent accident showed that the alleged negligent driver seemed "under the influence". The dramshop act requires proof of an illegal sale.[2] Neither the aforementioned depositions nor other depositions included eyewitness testimony that the alleged negligent driver was

[1] MCLA 436.22; MSA 18.993.

[2] *Wyatt v Chosay,* 330 Mich 661 (1951); *Davis v Terrien,* 364 Mich 82, 83 (1961); *Villa v Golich,* 42 Mich App 86, 88 (1972) and cases cited therein. See also footnote 4.

intoxicated before or after service in any of defendants' bars.

## I — THE FACTS

The deposition of Contardi, the alleged negligent driver, discloses his activities earlier in the day of the accident in question. He completed work at about 1:30 p.m. He had one bottle of beer at an unknown bar at 2:00 or 2:15 p.m. and arrived at defendant Gem Bar at about 3:30 p.m. He consumed three bottles of beer at this tavern between the hours of 3:30 and 7:00 p.m. After visiting his brother employed at a gas station, Contardi proceeded to the Oakwood Blue Jacket's Bar arriving there at about 8:30 p.m. He had five cups of coffee at this bar. At 11:30 p.m. he arrived at defendant New Way Inn with a Donald Lawyer where, in the time span of 30 to 45 minutes, he consumed one screwdriver (i.e., approximately 1 ounce of vodka plus orange juice). He then proceeded to defendant Agent 007 Bar arriving between 12:30 and 1:00 a.m. where he drank approximately two more screwdrivers. He testified he felt normal after the drinks. Lawyer's deposition supported Contardi's position. At about 2:15 a.m. Contardi was driven by Lawyer back to his truck which he had left at the parking lot of the Oakwood Blue Jacket's Bar, and from there, he left for home alone. Rizzo, plaintiffs' decedent, was struck and killed by Contardi's vehicle while standing outside of his tow truck at approximately 2:40 a.m.

The testimony in the depositions of two police officers questioning Contardi after the accident was conflicting as to whether Contardi appeared "under the influence" and as to whether his speech was slurred.

Defendant bars entered motions for summary

judgment after the taking of the depositions. In
general they claimed that plaintiffs had failed, as
required, to introduce any proof of an illegal sale
to the driver Contardi.

Plaintiffs in their answer stated that the proofs
would show that "Contardi had at least four (4)
beers prior to his entering the New Way Inn and
the 007 Bar"; that plaintiffs would "produce com-
petent medical evidence * * * that Contardi was
under the influence of intoxicating beverages after
drinking four (4) beers" and that he was served
further intoxicants; and that plaintiffs would show
"through the competent opinion of a police officer
who investigated the said accident that Contardi
was intoxicated at the scene of the accident."

The trial judge granted motions for summary
judgment in favor of defendant bars on the ground
"that the depositions" show lack of proof of an
illegal sale thus not raising any "genuine issue as
to any fact" relying on *Juckniess v Supinger,* 323
Mich 566, 572 (1949).[3] The trial judge said:

> "The Court has reviewed all pleadings, depositions of
> known witnesses, and heard argument of counsel for all
> parties.
>
> *    *    *

---

[3] GCR 1963, 117.3, set out in full in Part III, states in pertinent
part:

"Such affidavits, together with the pleadings, depositions, admis-
sions, and documentary evidence then filed in the action or submitted
by the parties shall be considered by the court at the hearing. * * *
Judgment shall be rendered forthwith if the pleadings show that any
party is entitled to judgment as a matter of law or if the affidavits or
other proof show that there is no genuine issue of fact."

The trial judge in reviewing "testimony in this record" failed to take
into account other data supporting plaintiffs' position that a genuine
issue of fact did exist. The issue is not whether there is sufficient
evidence to go to the jury, but whether there is sufficient evidence to
go to trial. Further, the trial judge's reliance on *Juckniess* is mis-
placed for that case dealt with the sufficiency of the evidence to
support the verdict.

"In the present case 'there is no testimony in this record which would justify submitting as an issue of fact to a jury the question as to whether' John G. Contardi 'while in the' New Way Inn or Agent 007 'where intoxicating liquor was sold or furnished to him, was in an intoxicated condition.' "

The Court of Appeals affirmed in an unreported per curiam opinion concluding:

"There is nothing in the record, viewed most favorably to plaintiff, from which the fact finder could infer that Contardi was intoxicated at the time he was served by any of the defendants."

We reverse and remand.

## II —THE DRAMSHOP ACT

The dramshop act MCLA 436.22; MSA 18.993 at the time of the accident in this case read in part:

"Every wife, husband, child, parent, guardian or other persons who shall be injured in person or property, means of support or otherwise, by an intoxicated person by reason of the unlawful selling, giving or furnishing to any such persons any intoxicating liquor, shall have a right of action in his or her name against the person who shall by such selling, or giving of any such liquor have caused or contributed to the intoxication of said person or persons or who shall have caused or contributed to any such injury, * * * "

The statute has been interpreted to mean that plaintiffs must prove, among other things, that there has been an unlawful selling. That is, to sustain his burden, plaintiffs had to introduce evidence from which a trier of fact could find that defendant bars served the driver, Contardi, while

he was intoxicated.[4] *Juckniess v Supinger,* 323
Mich 566, 572 (1949); *Long v Dudewicz,* 355 Mich
469, 471 (1959); and *Davis v Terrien,* 364 Mich 82,
83 (1961).

## III —REQUIRED PROOF FOR SUMMARY JUDGMENT (ISSUE 1). PERMISSIBLE DATA (ISSUE 2)

GCR 1963, 117.2(3) and 117.3 state:

".2 Grounds. The motion for summary judgment shall
state that the moving party is entitled to judgment in
his favor because of any 1 of the following grounds:

\*   \*   \*

"(3) that except as to the amount of damages there is
no genuine issue as to any material fact, and the
moving party is therefore entitled to judgment as a
matter of law.

".3 Motion and Proceedings Thereon. A motion based
upon sub-rule 117.2(3) shall be supported by affidavits,
and the opposing party prior to the day of hearing may
serve opposing affidavits. The affidavits submitted by
either party shall be governed by the provisions of sub-
rules 116.4, 116.5, and 116.6. Such affidavits, together
with the pleadings, depositions, admissions, and docu-
mentary evidence then filed in the action or submitted
by the parties shall be considered by the court at the
hearing. Each party shall be given opportunity to
amend his pleadings as provided by Rule 118 unless the
evidence then before the court shows amendment would
not be justified. Judgment shall be rendered forthwith if
the pleadings show that any party is entitled to judg-
ment as a matter of law or if the affidavits or other

---

[4] An action based upon the dramshop act places the burden on the
plaintiff to prove that 1) the person was intoxicated, 2) the defendant
served such an intoxicated person, and 3) such intoxication caused the
accident. *Villa v Golich,* 42 Mich App 86, 88 (1972), allows a second
alternative to 2) as follows: "or served a person until he became
intoxicated". The second alternative is not usually recognized in the
other cases. *Rizzo* does not require consideration of this question and
hence this Court will not do so.

proof show that there is no genuine issue of fact. If it
appears that the opposing party rather than the moving
party is entitled to judgment, the court may render
summary judgment in his favor without necessity of a
motion therefor."

In the Authors' Comments to this rule, Honig-
man & Hawkins[5] states:

"When summary judgment is claimed for lack of
factual merit, the court must be careful not to substi-
tute a summary hearing for a trial. The *trial may be*
*avoided only if the record presented at the hearing*
*shows that, * * * ;* or (2) *an essential element of proof*
*of the claim or defense cannot be supplied.*

\* \* \*

"If a motion asserts a hiatus in essential proof, *the*
*court must be satisfied that it is impossible for the*
*claim or defense to be supported at trial because of*
*some deficiency which cannot be overcome.*

\* \* \*

"Motions grounded upon sub-rule 117.2(3) must be
supported by affidavits. The purpose of the affidavit is to
assert the dispositive fact or facts upon which the
moving party claims no genuine dispute exists. Al-
though the Rule does not require opposing affidavits, it
is the *obligation of the opposing party to make a*
*showing by opposing affidavits, testimony, depositions,*
*admissions or documentary evidence on file that a*
*genuine issue of disputed fact does exist* as to the
questioned element of the claim or defense. *Durant v.*
*Stahlin,* 1965, 375 Mich. 628, 135 N.W.2d 392.

\* \* \*

"In motions under sub-rule 117.2(3), the court must
look beyond the pleadings to determine whether a
question of fact exists. *The supporting affidavit,* which
must be filed with such a motion, *identifies those facts*
which may appear to be controverted in the pleadings
but *which, the mover asserts, cannot be genuinely*

---

[5] 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed),
p 362 and 1972 Supp, pp 81, 83.

*disputed. The party opposing the motion must then come forward with a showing that there is evidence to make an issue on which a dispute truly exists.* If no such showing is forthcoming, summary judgment is granted. See *Durant v. Stahlin,* 1965, 375 Mich. 628, 135 N.W.2d 392; *Podvin v. St. Joseph Hospital,* 1963, 369 Mich. 65, 119 N.W.2d 108.

\* \* \*

"[T]he test more carefully stated would be whether the kind of record which might be developed, within the limits indicated by the pleadings and the affidavits or other material supporting and opposing the motion for summary judgment, *interpreted to give the benefit of any reasonable doubt to the opposing party,* would leave an issue upon which reasonable minds might differ or upon which a directed verdict would be proper." (Emphasis added.)

As to the first issue then, what do defendants' motions for summary judgment require to avoid trial? Obviously, the court rule requires there be trial unless "there is no genuine issue as to any material fact". As Justice SOURIS stated in *Durant v Stahlin,* 375 Mich 628, 646 (1965) in spelling out the summary judgment procedure when a motion is made under 117.2(3):

"[T]he hearing of such motions, \* \* \* , should be in the nature of an inquiry in advance of trial for the limited purpose of determining whether there is a genuine issue as to any material fact."

The courts are liberal in finding that a "genuine issue" does indeed exist. As Honigman & Hawkins correctly comments, (1) the court will "give the benefit of any reasonable doubt to the opposing party" and (2) "the court must be satisfied that it is impossible for the claim or defense to be supported at trial *because of some deficiency which cannot be overcome."* (Emphasis added.)

For example, the point made by Justice SOURIS in his opinion in *Durant v Stahlin,* 375 Mich 628, 650–651 (1965)[6] is very illuminating. He says:

"By insisting that summary judgment is not available whenever a presented issue of material fact turns upon the credibility of an affiant or witness whose deposition has been taken, *we intend thereby to limit severely the circumstances in which summary judgments properly may be entered.* The alternative would require our abandonment of what has been called the 'truth-testing process of cross-examination' and would encourage unwarranted invasion by judges of the jury's exclusive province. *United States v. United Marketing Association* (CCA 8, 1961), 291 F2d 851, 853, 854." (Emphasis added.)

See also *Arber v Stahlin,* 382 Mich 300, 309 (1969); *American Parts Co, Inc v American Arbitration Association,* 8 Mich App 156, 170 (1967).

As to the second issue, what data may be considered in deciding a motion for summary judgment after interrogatories and depositions but before trial testimony, reference to GCR 1963, 117.3 is particularly appropriate. To reiterate, the rule in part states:

"Such affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties shall be considered by the court at the hearing * * * ."

Also appropriate is commentary from Honigman & Hawkins, *supra,* as to what data plaintiffs in opposing the motion for summary judgment may have considered. It states:

"Although the Rule does not require opposing affida-

---

[6] There was no opinion of the Court in this case. There were two three vote concurring opinions with two Justices not participating.

vits, it is the obligation of the opposing party to make a showing by opposing affidavits, testimony, depositions, admissions or documentary evidence on file that a genuine issue of disputed fact does exist as to the questioned element of the claim or defense."

As we previously pointed out, the trial judge incorrectly failed to consider all of plaintiffs' answer to defendants' motions for summary judgment.[7] The defendants in their motions for summary judgment also appear to have been under the mistaken impression that the trial judge was limited to the depositions as far as deciding the motion.[8]

The original pleadings had properly alleged a cause of action and the defendants obviously could not have profitably attacked them. As indicated by the tenor of their motions for summary judgment the defendants sought to attack the depositions alone as failing to raise a "genuine issue as to a material fact".

The rule, however, is broader than depositions alone. It reads "affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed". In their answer plaintiffs promised to "produce competent medical evidence * * * that Contardi was under the influence of intoxicating beverages after drinking four (4) beers." This could be considered included under then appropriate "pleadings" or even as a substitute for an affidavit as affidavits are not required from the opposing party. In any event, the trial judge should have taken this data into consideration in reaching his conclusion, as we shall below in reaching our determination.

[7] See footnote 3.

[8] Defendants' motions all stated in part:

"That the depositions taken from all parties presently available clearly indicate that no such allegations can be sustained."

## IV — SUFFICIENT PROOFS FOR A GENUINE ISSUE OF FACT (ISSUE 3)

1. *Does proof of the amount of liquor consumed by itself raise a "genuine issue of fact" as to the lawfulness of the sale?*

To reiterate, plaintiffs had proof as to the amount of intoxicants Contardi consumed but no witness testifying Contardi was intoxicated when served or after service. By Contardi's own deposition, he admitted having at least four bottles of beer before visiting the first of the two remaining defendant bars and drinking about three screw-drivers in them.

In *Schratt v Fila,* 371 Mich 238, 248 (1963) this Court had before it the question of whether the proofs were sufficient to send to the jury the question of an unlawful sale to three men. There was testimony as to the amount of alcohol consumed before going to the defendant bar (seven—eight bottles, each between mid-afternoon and 11 p.m.). The men testified that they were not drunk. They admitted drinking while in defendant bar. The Court found that this testimony "was ample to go to the jury on whether the 3 men were intoxicated upon entering Janes Bar, and whether purchases were made therein."

*Schratt* is supported by *Higdon v Kelley,* 339 Mich 209, 215 (1954), where this Court said:

"We do not believe that expert testimony is necessary to show that 10 to 12 glasses of beer in an afternoon are sufficient to cause intoxication."

See also *Mason v Lovins,* 24 Mich App 101, 109, n 6 (1970).

We realize that certain language in *Wyatt v Chosay,* 330 Mich 661 (1951) appears to be in

conflict with the *Schratt* case. In *Wyatt,* we affirmed the decision for defendants stating:

"The fact that liquor was consumed is not sufficient to establish intoxication at the time of, or immediately prior to, the accident." 330 Mich 661, 670.

*Wyatt,* however, is not controlling. In the first place, *Wyatt* can be distinguished from the case at bar on the facts. In the second place the quoted sentence can be correct only in the sense that proof of consumption of an undefined amount of liquor under unspecified circumstances does not for all purposes establish intoxication.

The outstanding difference between *Wyatt* and the instant case is that there was not a single witness who testified to his drunkenness while five testified to his sobriety, whereas here plaintiff promises an expert witness to testify that the amount consumed would produce drunkenness.

The quoted sentence may correctly state a theoretical concept that the mere proof of consumption alone as an isolated fact does not establish intoxication, but that is not the dispositive issue in this case any more than it was in *Wyatt.* The dispositive fact is the consumption of a particular amount of liquor under particular circumstances.[9] As we have said the quoted sentence is in no way controlling.

On the authority of *Schratt,* it appears that proof of a particular amount consumed may be sufficient to raise a "genuine issue" of fact as to

[9] There are other Michigan cases which have dealt with the amount of intoxicants consumed. However, none of these cases relates to the exact point at issue, what it takes to raise a "genuine issue" of fact on a motion for summary judgment after interrogatories and depositions. See, for example, *Juckniess v Supinger,* 323 Mich 566 (1949); *Grinstead v Anscer,* 353 Mich 542 (1958); *Long v Dudewicz,* 355 Mich 469 (1959); and *Davis v Terrien,* 364 Mich 82 (1961).

whether there was an unlawful sale. In the instant case the number of bottles of beer consumed is less than in *Schratt,* but at least by the time of service in the last bar there were screwdrivers served in addition. This might very well, particularly in light of the rule that plaintiff is entitled to the benefit of any reasonable doubt, raise the necessary "genuine issue" at this stage in the proceedings. However, we do not have to rest our opinion on such a rule here because the plaintiffs promise competent medical testimony that four beers is intoxicating.

2. *Does the plaintiffs' answer promising medical testimony to prove that Contardi was intoxicated after four beers raise a genuine issue of fact?*

The offer to "produce competent medical evidence * * * that Contardi was under the influence of intoxicating beverages after drinking four (4) beers" along with Contardi's admission in his deposition of drinking that amount certainly creates an issue of fact as to Contardi's intoxicated condition prior to the subsequent service of screwdrivers by defendants according to further testimony in his deposition.

As stated above, it is true that this offer to produce medical evidence cannot be totally characterized as an affidavit, deposition, admission, or documentary evidence under GCR 1963, 117.3. This, however, is data in the form of the permitted category of a "pleading" *(i.e.,* plaintiffs' answer to defendants' motions for summary judgment) or in lieu of an affidavit which is not required of an opposing party. It is supportive of plaintiffs' claim and should have been considered by the trial judge in ruling on the motions.

3. *Can the state of intoxication 1/2 hour after*

*leaving the last bar raise an inference that Contardi was intoxicated while at the last bar or bars thus raising a genuine fact issue?*

Plaintiff relies heavily on the testimony taken through the deposition of Officer Sabon who aided Officer Young in the questioning of Contardi after the accident. Officer Sabon testified:

"He had been drinking. Whether he was under the influence, this is open for debate to a point.

\*  \*  \*

"I would think he was under the influence to a point.

\*  \*  \*

"His speech being slurred, his eyes blurry. His clothes were disarranged." See deposition of Officer Sabon, pp 6, 9.

Testimony which ran counter to Officer Sabon's was that given by Officer Young. In his deposition, he stated in response to questions:

"*Q.* Did he have any tendency to slur his speech?
"*A.* No.

\*  \*  \*

"*Q.* Would that indicate, then, that it was your opinion that Mr. Contardi was not under the influence of alcohol?
"*A.* Yes." See deposition of Officer Young, pp 8, 10.

The evidence presented by plaintiffs in these depositions would help the jury to make necessary determinations of fact by permissible inferences from the submitted evidence. See *Butrick v Snyder,* 236 Mich 300, 305 (1926); *Fletcher v Flynn,* 368 Mich 328, 334 (1962); *Villa v Golich,* 42 Mich App 86, 89 (1972).

This evidence alone might be sufficient to raise the "genuine issue as to any material fact" neces-

sary to defeat a motion for summary judgment. Certainly this evidence in combination with the evidence as to the amount of alcohol consumed plus promised competent medical testimony that such amount was intoxicating does raise such a "genuine issue".

Therefore, plaintiffs' several proofs at this stage of the proceedings did raise a "genuine issue" of fact as to whether or not Contardi was intoxicated when served. Plaintiffs have presented admissible evidence from which this question could be resolved in their favor.

In conclusion it is important to note what the office of a motion for summary judgment at this point in the proceedings is and is not. It is not as is the case of a motion for summary judgment before interrogatories and depositions a test as to whether a cause of action has been stated. Presumably the case has proceeded beyond that point, although obviously if the original pleadings did not state a cause of action, the pleadings would have to be amended or the case dismissed.

At this point the test is whether the data properly produced after the original pleadings is sufficient to permit the plaintiff to go to trial and proceed with his proofs. It is no more than that. It is not a judgment that the plaintiff necessarily has a case sufficient to go to a jury. In the instant case, for example, the plaintiffs might not in fact be able to produce a competent medical expert at all or one who would indeed testify that four bottles of beer would make Contardi intoxicated.

To recapitulate, the office of a motion for summary judgment by a defendant after interrogatories and depositions is to test whether plaintiff's appropriate data raises a "genuine issue as to any material fact" on which defendant challenges him.

If plaintiff's data does raise such a "genuine issue" he may proceed to trial and his proofs, win or lose. If plaintiff's data fails to raise such a "genuine issue" defendant is entitled to a summary judgment.

The Court of Appeals and the trial court are reversed, the judgment is vacated and the cause is remanded for further proceedings not inconsistent with this opinion.[10]

Costs to the plaintiffs.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, SWAINSON, and LEVIN, JJ., concurred with WILLIAMS, J.

M. S. COLEMAN, J. *(dissenting).* The basic issue which confronts this Court concerns the propriety of the grant of summary judgment which, as an instrument of the trial court, rarely has been sustained of late. Naturally, such exercises of judicial discretion should be undertaken with great care and deliberation. Litigants have a right to present and be judged on well-founded issues. However, by adopting the language of Justice WILLIAMS we will eliminate any practical utility which summary judgments may possess.

This cause of action is predicated solely upon the dramshop act. Its statutory definitions and precedential interpretations require the plaintiff to prove, in part, that the defendant bar served an individual while intoxicated. There is nothing in the record before this Court which can support an

---

[10] Among the decisions which indicate circumstances under which it is error to enter a summary judgment, where there are questions of fact to be determined, are the following: *Bilicki v W T Grant Co,* 382 Mich 319, 326 (1969) and cases cited therein; *Gerard v Small,* 382 Mich 327 (1969); *Miller v Miller,* 373 Mich 519 (1964); *Kaunitz v Wheeler,* 344 Mich 181, 186 (1955) and cases cited therein; and *Klug v Berkley Homes, Inc,* 334 Mich 618 (1952).

allegation that Contardi was intoxicated when served by any of the defendant establishments. Contardi's activities were traced over a 12- or 13-hour period. There are no witnesses at all as to any intoxication during this period.

Emphasis has been placed on plaintiff's promise "to produce medical evidence * * * that Contardi was under the influence of intoxicating beverages after drinking (4) beers" in five hours. This so-called "medical evidence" can be presumed to be pure theory since Contardi was not examined by the police investigating the accident. No breath analysis was made. No blood was taken. No coordination test was given. Contardi was not even arrested for driving while intoxicated.

To afford consideration to plaintiff's promise to produce, the trial judge would also be forced to give such a verbal, transitory offer the status of an affidavit. It would have to be considered as part of the "pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties" to be considered at a court hearing (GCR 1963, 117.3). To stretch the rules to fit a single desired result this Court would force Michigan courts to apply the distortion here wrought to all future cases.

T. E. BRENNAN, J., concurred with M. S. COLEMAN, J.