LANCZKI v PROVIDENCE HOSPITAL

1. ACTION—MALPRACTICE—PHYSICIANS AND SURGEONS—SPECIALISTS—
   STANDARD OF CARE.

   A plaintiff must establish as a matter of law that the defendant
   had a duty to him before he may maintain a cause of action;
   the duty in a medical malpractice case is the duty to provide
   care in accordance with the normal standards of the physician,
   and the standard of care for a specialist is that of a reasonable
   specialist practicing medicine in the light of present day scien-
   tific knowledge.

2. PHYSICIANS AND SURGEONS—PATIENTS—MALPRACTICE—ABERRANT
   BEHAVIOR—STANDARD OF CARE.

   The law does not impose an unreasonable duty upon a surgeon to
   guard against aberrant behavior of a patient where there is no
   history of such behavior and no reasonable indication from the
   records of the patient, or medication given, that such aberrant
   behavior will occur.

Appeal from Wayne, Horace W. Gilmore, J.
Submitted June 23, 1977, at Detroit. (Docket No.
27495.) Decided August 11, 1977.

Complaint by Michael Lanczki against Provi-
dence Hospital and John Beuker, M. D., for dam-
ages for injuries sustained in a fall from a hospital
window. Summary judgment for defendant John
Beuker. Plaintiff appeals. Affirmed.

*Lopatin, Miller, Bindes, Freedman & Bluestone*
(by *Michael Gagleard),* for plaintiff.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 106,
110, 198.

[1] Standard of skill or care required of specialist. 21 ALR3d 953.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *J. P. O'Leary* and *John P. Jacobs*), for defendant.

Before: BEASLEY, P. J. and V. J. BRENNAN and J. R. McDONALD,* JJ.

PER CURIAM. Plaintiff Michael Lanczki appeals the order of Wayne County Circuit Judge Horace W. Gilmore granting defendant John Beuker's motion for summary judgment pursuant to GCR 1963, 117.3. Plaintiff appeals as of right under GCR 1963, 806.1.

Having reviewed the record and legal arguments in this case, we find no merit to plaintiff's claim that any genuine issue of fact remained. Because we find Judge Gilmore expressed what we consider to be the proper reasoning and disposition in this matter, we will adopt his opinion as our own:

"Plaintiff was a patient of defendant Beuker, an orthopedic surgeon, in Providence Hospital. He had been admitted to the hospital on July 29, 1972, with a diagnosis of ruptured disc, and two days later defendant performed a laminectomy upon plaintiff. Post-operatively, defendant prescribed ampicillin for plaintiff, a drug used to stop and prevent infection.

"Following surgery defendant examined plaintiff on a daily basis and on the first post-operative day allowed plaintiff to be ambulatory. On the morning of August 4, defendant again examined plaintiff and learned from plaintiff that he had experienced a bad night before and did not sleep well. Plaintiff told defendant, however, that he now felt fine and would like to go home. Defendant suggested that plaintiff should remain in the hospital another day, but plaintiff said he wanted to leave and since there were no physical problems and since plaintiff related that he felt fine, defendant authorized his discharge.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"After speaking to the defendant, plaintiff packed his suitcase, proceeded to get dressed, and shortly thereafter jumped from the window of his room, causing injuries for which this action is brought.

"The nurse's notes in the hospital records indicate that during the evening of August 3 the defendant was up most of the night, but refused medication. The notes further indicated he was upset about certain conversations, that he was hearing noises of Dr. Beuker and his (patient's) wife and appeared to be very nervous and apprehensive.

"A subsequent note, made at 7:30 a.m., on August 4, the morning of discharge, states that the patient appeared oriented, quiet and cooperative, and was speaking rationally and ate his breakfast well.

"Plaintiff's theory of malpractice against defendant Beuker claims that the defendant violated the standard of practice in ordering anesthetic and medication which caused abnormal psychic reaction; in failing to observe psychic reactions of plaintiff and failing to question plaintiff in detail as to his bad night prior to ordering his discharge. Plaintiff claims that on the night prior to the incident giving rise to this law suit he had hallucinations.

"The undisputed facts further show that the plaintiff had no prior abnormal psychic experiences, and the psychiatrist who examined and treated plaintiff after his fall from the window found no psychosis, but considered his action to be an isolated incident.

"The only medications given plaintiff, other than those for sleeping and pain, was ampicillin, and the undisputed affidavit of Paul Donohue, M. D., Chief of Infectious Diseases at Providence Hospital, states that there is no medical information showing that ampicillin therapy in any way creates any psychological problems.

"Defendant contends that as an orthopedic surgeon he had no duty to his patient to prevent or guard against acts of self-destruction, absent any history of mental disorder, and that as an orthopedic surgeon he was under no duty to detect and recognize psychiatric disorders when there was no indication that there were any, and that absent any medical knowledge of drugs

causing psychological disorders, he had no duty to guard against aberrational behavior as the result of the administration of such drugs.

"On the other hand, plaintiff contends that the standard of practice for a surgeon can only be determined by the testimony of practitioners and experts in the field, that at this point no expert practitioner has been examined as to the standard of practice, and that, therefore, the motion for summary judgment is premature. He further contends that fact question [sic] remain as to: (1) whether the aberrational psychic reaction of plaintiff could have been caused by the anesthetic and other medication singularly or in combination; (2) whether defendant failed to observe psychic and mental defects of the plaintiff; and (3) whether defendant Beuker's superficial questioning of the nurses as to the 'bad night' was in violation of the standard of practice, when deeper questioning could have revealed a paranoid anxiety of the plaintiff.

"Considering the plaintiff's allegations in their most favorable light, and with a full awareness of the strong presumption against granting a summary judgment in Michigan (see *Rizzo v Kretschmer,* 389 Mich 363 [207 NW2d 316] [1973]), the Court nevertheless concludes that the motion for summary judgment must be granted.

"Before plaintiff may maintain a cause of action, he must establish as a matter of law that the defendant had a duty to him. The duty in a malpractice case is the duty to provide care in accordance with the normal standards of the physician, and the standard of the care for a specialist is that of a reasonable specialist practicing medicine in light of present day scientific knowledge. (See *Naccarato v Grob,* 384 Mich 248 [180 NW2d 788] [1970]).

"Here, the defendant is a board certified orthopedic surgeon who does not hold himself out as a specialist in psychiatry. It is significant that there was no history of mental disorders and suicidal attempts by plaintiff at the time of the incident. The only indication that there could be any trouble were the nurse's notes and the nurse's conversation with defendant. These indicated that the defendant had had a bad night, had been

nervous and apprehensive and had had some type of hallucination.

"It is significant, however, that the morning nurse indicated that the patient was perfectly well oriented and adjusted, and ate his breakfast well. It is also significant that the defendant suggested to the plaintiff that he remain another day, but the plaintiff said he felt perfectly fine and wanted to go home.

"Had there been any history of mental disorder that the defendant was aware of, a different situation would be presented.

"But the law does not impose an unreasonable duty upon a surgeon to guard against abberrant *[sic]* behavior when there is no history of such behavior, and no reasonable indication from the records of the patient, or the medication given, that such abberrant *[sic]* behavior will occur.

"There is nothing in the record to support the plaintiff's claim that the abnormal psychic reaction could have been caused by the anesthetic or other medication, singularly or in combination, and there is no showing of psychiatric symptoms or mental problems that would alert the doctor to the possibility of self-destructive tendencies.

"The case fails to disclose any legal duty of defendant to anticipate that plaintiff would attempt suicide by jumping out of the window. The action of plaintiff was totally unpredictable and totally unforeseeable.

"To hold in this case that defendant had a duty to recognize a potential psychiatric disorder and take steps to restrain the plaintiff extends the duty of defendant far beyond any reasonable limits. Were such an unreasonable burden placed upon defendant he could never safely prescribe any medication or release any patient without fear of a malpractice action."

Affirmed.