## BILICKI *v.* W. T. GRANT COMPANY.

## W. T. GRANT COMPANY *v.* BENITEAU BIRD COMPANY.

### OPINION OF THE COURT.

1. WORDS AND PHRASES—PSITTACOSIS.

Psittacosis, commonly called "parrot fever", may be defined as a disease of birds, especially of parrots, transmissible to man, in whom it runs the course of a violent typhoid fever without abdominal symptoms but with pulmonary disorders resembling severe infectious pneumonia, and is due to *bacillus psittacosis.*

2. APPEAL AND ERROR—CREDIBILITY OF MEDICAL EXPERTS.

The Supreme Court does not pass upon the credibility of medical experts or the weight to be accorded to their testimony.

3. SALES—PARAKEETS—EVIDENCE—QUESTION OF FACT—CAUSE OF PSITTACOSIS.

Evidence presented by husband and wife, purchasers of a parakeet from defendant store, including medical testimony concerning the original and subsequent diagnoses of plaintiffs, the type and validity of clinical tests administered and their results, the similarity and dissimilarity of symptoms between pneumonia and psittacosis, the medical treatment and prognoses of both plaintiffs, the lay testimony concerning the prevalence of psittacine birds in the area at the time, the circumstances surrounding the purchase of the parakeet and his ultimate destruction *held,* to raise a question of fact upon which reasonable minds might differ as to the causal relationship between the purchase of the parakeet and the illness of plaintiffs which they claimed to be psittacosis.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Animals § 37 *et seq*.
Extent of liability of seller of livestock infected with communicable disease. 87 ALR2d 1317.
[2] 31 Am Jur 2d, Expert and Opinion Evidence § 181 *et seq.*
[3–5] 41 Am Jur 2d, Pleading § 340 *et seq.*

4. Judgment—Summary Judgment—Evidence.

Summary judgment will not lie where material facts are at issue (GCR 1963, 117.2[3]).

Dissenting Opinion.

Kelly, J.

5. Judgment — Summary Judgment — Psittacosis — Question for Jury.

Summary judgment for defendant store owner and third-party defendant bird supplier in consolidated actions by husband and wife to recover for injuries sustained when they allegedly contracted psittacosis after purchase of a parakeet held, proper, where determinative question whether plaintiffs had psittacosis required expert testimony to be considered by the jury and record does not support a finding for plaintiff on such issue (GCR 1963, 117.2[3]).

Appeal from Court of Appeals, Division 1, Lesinski, C. J., and Fitzgerald and McGregor, JJ., affirming Wayne, Gilmore (Horace W.), J. Submitted June 3, 1969. (Calendar No. 1, Docket Nos. 52,019; 52,020.) Decided September 3, 1969.

10 Mich App 612, reversed.

Declaration by Joseph F. Bilicki and Rose Bilicki against W. T. Grant Company, a foreign corporation, to recover damages for injuries sustained when they became ill after purchasing a parakeet from defendant. Third-party complaint by defendant against Beniteau Bird Company, a Michigan corporation. Cases consolidated for trial. Summary judgment for defendant and third-party defendant. Plaintiffs appealed to the Court of Appeals. Affirmed. Plaintiffs appeal. Reversed and remanded for further proceedings.

*Albert Lopatin (Norman L. Zemke,* of counsel), for plaintiffs.

*Alexander, Buchanan & Conklin (John A. Kruse,* of counsel), for defendant.

*Feikens, Dice, Sweeney & Sullivan,* for third-party defendant.

T. M. KAVANAGH, J.   Plaintiffs Joseph F. Bilicki and his wife, Rose, appealed from summary judgment[1] granted by the circuit court and the decision of the Court of Appeals affirming the summary judgment.   10 Mich App 612.

All the parties agree to the fact that plaintiffs purchased a parakeet from defendant W. T. Grant Company, February 22, 1961, which had previously purchased it from third-party defendant Beniteau Bird Company.   The remaining facts are taken from the pleadings and depositions filed in the circuit court, particularly the depositions of the three medical experts. It is from the facts, or lack of facts, adduced from the depositions of the three doctors that summary judgment was granted.

Plaintiff Rose Bilicki deposed that in February 1961 she purchased a parakeet from defendant store. When she brought the bird home she noticed that he acted sickly in that he just "sat there like he was in sort of a daze."   For the following 3 to 4 weeks she attempted to nurse the bird back to health, but he ate very little, acted listless and, after approximately three weeks, "he couldn't breathe good.   He was gasping for breath."

Plaintiff further deposed that at approximately the same time, 3 to 4 weeks after the purchase of

---

[1] See GCR 1963, 117.2(3).

the bird, she became ill, suffered from headaches, loss of appetite, nausea, and had a temperature of 105 degrees. After an unsuccessful attempt by the family physician to treat plaintiff at her home, she was admitted to Ford hospital. She was examined upon her admittance and informed by the examining doctor that she had psittacosis[2] and was put in isolation. Fourteen days later she was discharged from Ford hospital, but was still debilitated and "too weak to do much."

The deposition of plaintiff Joseph F. Bilicki corroborated his wife's testimony. He additionally deposed that when he took his wife to the hospital the examining doctor, after inquiry as to whether they owned a bird and the taking of X-rays, informed plaintiff that his wife had "parrot fever, which is very rare," and that she would have to be isolated. Plaintiff related that he contacted the Dearborn health department and, after a delay of a couple of days, was instructed on how to dispose of the bird. He destroyed it according to instructions. The health department picked up the bird the next morning. It subsequently reported that the bird was too decomposed to determine if it was diseased.

Plaintiff further deposed that, approximately three days after his wife's return from the hospital, he suffered severe headaches and his temperature rose to 103 degrees. He went to Ford hospital and was examined, isolated, and treated "for the same thing as my wife had." He was released from the hospital after five days but was confined to his home for an additional week.

---

[2] Psittacosis, commonly called "parrot fever," has been defined as: "A disease of birds, especially of parrots, transmissible to man, in whom it runs the course of a violent typhoid fever without abdominal symptoms but with pulmonary disorders resembling severe infectious pneumonia. It is due to bacillus psittacosis." Gould's Medical Dictionary (Scott, 2d ed), p 1158.

We examine the following depositions given by the three expert medical witnesses. It was upon these depositions that the circuit court concluded that there was no reasonable medical certainty that the plaintiffs had the disease of psittacosis and granted the summary judgment.

Dr. Frank Cox deposed that he treated plaintiff Rose Bilicki and made a provisional diagnosis of psittacosis. Upon cross-examination, Dr. Cox stated that the symptoms looked for in diagnosing psittacosis were "fever, cough, headache, nose bleed, liver and spleen palpable, and a history of contact." While most of these symptoms were admittedly present in plaintiff's case, Dr. Cox agreed that "In view of the failure of the rise in titer of the psittacosis complement-fixation test, a specific etiologic diagnosis cannot be made and it is thus probable that she had a nonspecific acute respiratory infection rather than psittacosis." Dr. Cox admitted that the hospital records indicated a final diagnosis of "psittacosis suspected."

Dr. Edward Quinn deposed that he examined Rose Bilicki several times at the hospital and diagnosed her illness anatomically as "bronchial pneumonia." Dr. Quinn stated that psittacosis is a viral disease acquired from psittacine birds and that there are two tests to determine the presence of psittacosis— one a sputum test and the other a blood test called the complement-fixation test. He agreed that in the process of doing a serial study of the complement-fixation test, there would be a rising titer in the event of psittacosis. This test was administered to Rose Bilicki, but in the opinion of Dr. Quinn there was no diagnostically significant rise in titer,[3] and

---

[3] It was shown in the record that the complement-fixation tests were performed on March 24, March 31, April 6, and April 18, 1961, to discover psittacosis. The first test showed "1 to 2;" the second, "1 to 4;" the third, "1 to 4;" and the fourth, "1 to 2."

he concluded that Rose Bilicki did not have psitta-
,cosis. Dr. Quinn did admit, however, that he found
Rose Bilicki's spleen was enlarged, which doesn't
normally happen in pneumonia cases but is a symp-
: tom in psittacosis, and that the antibiotics used in
treatment might have affected the blood as far as
the complement-fixation test was concerned. When
asked if he really wasn't sure in his own mind
whether Rose Bilicki had psittacosis or pneumonia,
Dr. Quinn responded:

"Again, you are using the words 'pneumonia' and
'psittacosis' as though one can distinguish these two,
one from the other, as though they are two different
conditions. I have tried to repeatedly tell you, sir,
that psittacosis is a form of pneumonia."

Dr. Quinn further deposed that Joseph F. Bilicki
was admitted to the hospital on April 10, 1961.
Both the sputum culture and complement-fixation
tests were administered and, upon the negative re-
sults of both tests, the final diagnosis of his ailment
was "acute respiratory disease."

Prior to hearing on the motion for summary judg-
ment, plaintiffs filed an affidavit of Dr. Edward
MacKenzie. The affiant stated that he had read the
hospital records and that—based upon these records,
the history of contact with a sick bird, and the results
of the complement-fixation tests showing the rise and
fall in titer[4]—he concluded "it would seem that Mrs.
Bilicki did in fact have psittacosis." At the hearing
on the motion for summary judgment Dr. MacKenzie
reaffirmed this conclusion, but further explained:

[4] Deponent further stated that in his opinion these tests indicated
a positive reaction with the test of April 6, 1961, being of greater
titer than the test of March 31, 1961.

Deponent also stated that the records indicated that Rose Bilicki
returned for a test as an outpatient on April 18, 1961, and that
this test indicated a decrease in titer as compared with that of
April 6, 1961.

"I examined the patient strictly abstractly. Not my opinion, but the opinion that one would form from looking at this record. Not talking to the patient, not having seen the patient, I was exploring the possibilities of the diagnosis having been psittacosis. And, therefore, I said it would seem. This is not my opinion, as such."

Upon questioning by the court, Dr. MacKenzie admitted that he was unable to form his opinion to a degree of reasonable medical certainty.

The circuit court granted summary judgment for the reason plaintiffs' only medical expert "has not rendered an opinion and says he has none." The Court of Appeals concluded that, "there is no testimony upon which a finding by a trier of fact in favor of plaintiffs could be justified." 10 Mich App 612, 616. We disagree.

Reviewing the depositions of the medical experts, we feel that their testimony was inconclusive. The treating physicians candidly admitted that they "were unable to establish a specific etiologic agent" that caused the illness. They also admitted that psittacosis is a form of pneumonia and that the two are symptomatically similar except for the fact that in psittacosis cases the spleen becomes enlarged, whereas in pneumonia cases it does not. What these medical experts did assert is that the tests were negative as to a finding of psittacosis primarily because there was no significant rising titer on the serial studies. However, Dr. MacKenzie in his affidavit indicated that he considered the rise and decrease in titer to be significant. Further, as he stated in a letter read in open court, "the validity of this test would have to be established by the pathologist at Ford hospital in charge of the virology laboratory."

We do not pass upon the credibility of the medical experts or the weight their testimony is to be ac-

corded. This is the function of a trier of fact. Based upon all of the facts presented in this record —the medical testimony concerning the original and subsequent diagnoses, the type and validity of clinical tests administered and their results, the similarity and dissimilarity of symptoms between pneumonia and psittacosis (e.g., the enlarged spleen), the medical treatment and prognoses of both patients, the lay testimony concerning the prevalence of psittacine birds in the area at that time, the circumstances surrounding the purchase of the parakeet and his ultimate destruction—and all the reasonable inferences therefrom, we feel a material question of fact exists upon which reasonable minds might differ. Reasonable minds might or might not find that there was a causal relationship between the purchase of the parakeet and the illness of plaintiffs.

Where material facts are at issue, summary judgment will not lie. *International Chemical Workers Union, Local 179, AFL-CIO*, v. *Swenor* (1962), 368 Mich 658; *Tripp* v. *Dziwanoski* (1965), 375 Mich 619; *Durant* v. *Stahlin (Appeal re Van Dusen, Elliott, Romney)* (1965), 375 Mich 628; *Brooks* v. *Fields* (1965), 375 Mich 667; *McCoy* v. *DeLiefde* (1965), 376 Mich 198.

Plaintiff Joseph F. Bilicki died June 20, 1969, subsequent to taking the appeal in this case. Rose Bilicki was appointed administratrix of his estate and his cause has been continued in her name.

The summary judgment of the circuit court and its affirmance by the Court of Appeals are reversed and the causes remanded for further proceedings.

Plaintiffs shall have costs in both appellate courts.

T. E. Brennan, C. J., and Dethmers, Black, Adams, and T. G. Kavanagh, JJ., concurred with T. M. Kavanagh, J.

Kelly, J. (*dissenting*). In deciding that the summary judgment[1] should be affirmed, I quote with approval from the opinion of the Court of Appeals[2] as follows:

"The determinative question in this case is whether or not the plaintiffs had psittacosis. This was a question requiring expert testimony to be considered by the jury for a finding of fact at the trial. .* * *

"Upon a search of the record we can find no expert medical opinion which supports the contention that the plaintiffs had psittacosis. There is no testimony upon which a finding by a trier of fact in favor of plaintiffs could be justified. Summary judgment was proper."

The judgment should be affirmed. Costs to appellees.

---

[1] See GCR 1963, 117.2(3).—Reporter.
[2] *Bilicki* v. *W. T. Grant Co.* (1968), 10 Mich App 612, 613, 616.