### DOE v TOWNSHIP OF OCEOLA

Docket Nos. 77-2454, 77-2455. Submitted May 2, 1978, at Lansing.—
Decided July 6, 1978.

A large sum of money was discovered buried in an undeveloped area of Oceola Township, Livingston County. The finder turned the property over to the state police and it was subsequently turned over to the State Treasurer to hold. The finder, under the name John Doe, sought a declaratory judgment to determine the rights of any parties in and to the property, and requesting it to be declared common law treasure trove or, in the alternative, lost goods. Oceola Township and the Director of the State Police were named as defendants. The Attorney General intervened as a defendant, and also filed a cross-complaint contending that the code of escheats controlled the disposition of the property. The township also filed a cross-complaint claiming an interest in the property. Thomas D. Powell, the owner of the land on which the property was found, filed a cross-complaint against the other parties alleging ownership of the property found. The Livingston Circuit Court, Paul R. Mahinske, J., entered a summary judgment in favor of plaintiff John Doe and Oceola Township under the lost goods act. Both the Attorney General and Powell appeal. *Held:*

1. Summary judgment was inappropriate because the rights to the property depend primarily upon the weight and credibility which is assigned to the testimony of the landowner, Powell, who has claimed that the money in fact belongs to him. The determination of ownership, therefore, is an issue of fact which has not yet been determined.

2. Because ownership of the property has not yet been determined and the court cannot say as a matter of law that the property is not subject to escheat, the court's finding that the Attorney General did not have standing was error.

Reversed and remanded.

References for Points in Headnotes
[1] 73 Am Jur 2d, Summary Judgment § 36.
[2, 3] 27 Am Jur 2d, Escheat §§ 32, 46.

1. JUDGMENT—SUMMARY JUDGMENT—GENUINE ISSUE OF MATERIAL
   FACT—CREDIBILITY OF WITNESS—COURT RULES.
   Summary judgment is not appropriate in a case where a determi-
   nation of the respective rights of the parties rests primarily
   upon the weight and credibility which the trial court assigns to
   the testimony of an affiant or witness whose deposition has
   been taken; in such circumstances a genuine issue of material
   fact exists (GCR 1963, 117.2[3]).

2. ESCHEAT—ATTORNEY GENERAL—STANDING—STATUTES.
   The Attorney General has the power to intervene in a case where
   property is subject to escheat due to failure of title for one of
   several enumerated reasons; therefore, in a case where the
   ownership of a sum of money found buried is a question of fact
   to be determined the Attorney General has standing to repre-
   sent the state (MCL 567.14; MSA 26.1053[4]).

3. ESCHEAT—ATTORNEY GENERAL—STANDING—BURDEN OF PROOF.
   The Attorney General has standing to participate on behalf of the
   state where ownership of property is disputed and the court
   cannot say as a matter of law that the property is not subject
   to escheat, although the state carries the burden of establishing
   its right to escheatable property.

*Draugelis, Ashton & Scully* (by *Richard T. Haynes),* for plaintiff.

*Carl J. Schoemer* and *Foster, Swift, Collins & Coey, P. C.,* for Oceola Township.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Bernard Rosner,* Assistant Attorney General, for the Director of State Police and the Attorney General.

*Downs & Pirich,* and *Moon, McGivney & Reeds,* for Thomas D. Powell.

Before: J. H. GILLIS, P. J., and D. E. HOLBROOK and N. J. KAUFMAN, JJ.

D. E. HOLBROOK, J. On October 8, 1974, at ap-
proximately 10:30 a.m., plaintiff John Doe em-

barked upon a hunting expedition over certain undeveloped lands in Oceola Township. Plaintiff admitted that he had no permission to enter this land, but also noted that the owner had not posted it with "No Trespassing" signs. During the course of his expedition, the plaintiff came upon an area where branches and leaves had been placed over a freshly dug hole; beneath this debris plaintiff uncovered a rather large metal suitcase.

Plaintiff returned home with his "game", and after a single half-hearted attempt to open it he left it in his garage and retired into his home to other pursuits. Later the same day, plaintiff informed the state police of his most recent acquisition and an officer was dispatched to investigate. Together, plaintiff and the state police officer pried open one corner of the suitcase sufficiently far to determine that it contained a substantial amount of paper currency.

The state police then took custody of the suitcase and its contents, and by order of the Livingston County Circuit Court it was turned over to the Treasurer of the State of Michigan to hold pending determination of any claims which might arise regarding it. On November 27, 1974, plaintiff John Doe filed a complaint in Livingston County Circuit Court seeking a declaratory judgment pursuant to GCR 1963, 521, adjudicating the respective rights of any parties in and to the discovered materials, and praying that these materials be determined to be common law treasure trove, or, in the alternative, lost goods under MCL 434.1, *et seq.;* MSA 18.701, *et seq.,* the lost goods and stray beasts act, hereinafter called the lost goods act.

Under the former doctrine, plaintiff's rights to the money would be superior to those of anyone except the rightful owner. Under the latter stat-

ute, plaintiff would be required to remit one-half of the value of the property to the government of the township in which the property was found if it remained unclaimed following the statutory period.

Defendant Attorney General intervened and filed an answer to the plaintiff's complaint, and also filed a cross-complaint contending that the code of escheats, MCL 567.11, *et seq.;* MSA 26.1053(1), *et seq.* effectively repealed the lost goods act and is therefore controlling. Defendant township filed an answer to each of these complaints and in addition filed a cross-complaint claiming an interest in the property under the lost goods act.

John Doe, defendant, the owner of the property upon which the suitcase was found, also entered an appearance by his attorney and filed a cross-complaint alleging ownership of the property. He moved for accelerated judgment and identified himself as Thomas D. Powell. He relied on his ownership of the land and alleged ability to identify and describe both money and suitcase. On January 22, 1975, this motion was denied.

On February 14, 1975, Powell was deposed. He testified as to the general description of the suitcase and contents. While the suitcase contained $383,840, Powell testified that it contained $338,000 and that he could not be off by more than $1,000. Powell's entire description of the suitcase and contents indicated substantial knowledge of the property, however, it was inaccurate in so many more-or-less minor details that its firsthand nature was called into question. Powell repeatedly refused to answer any questions as to the source of the money. He did claim that a friend named Glen Kavlish could verify his ownership of the money,

however, Kavlish was unavailable to testify as he could not leave his two ill parents in Florida. Powell also testified that his property was not enclosed by a fence and that there were no "No Hunting" or "No Trespassing" signs posted on the property.

The Attorney General and Powell each moved for summary judgment. On May 23, 1977, the trial court entered summary judgment for plaintiff John Doe and Oceola Township under the lost goods act. The court found that Powell had not established ownership or a right to possession of the property. He found that the code of escheats did not apply to the facts, that it did not repeal the lost goods act, and that the Attorney General did not have standing to raise it in the instant case. The court also ruled that the property was not "treasure-trove" at common law, as it had not been abandoned for the requisite time period. From entry of *summary judgment* for plaintiff John Doe and the township, the Attorney General and Powell appeal by right.

GCR 1963, 117 specifically provides for rendition of summary judgment where there exists "no genuine issue as to any material fact", GCR 1963, 117.2(3). This rule was adopted in Michigan, and other similar rules were adopted in other jurisdictions, in an effort to reduce the expense and delay of litigation where, for one of the enumerated reasons, a full trial on the merits is not required. Nevertheless, "in deciding whether the case is appropriate for summary judgment, the court must be strictly sure that it is not required to pass summarily upon any genuinely disputed issue of fact. In this sense, this rule is strictly construed." *African Methodist Episcopal Church v Shoulders,* 31 Mich App 290, 293; 187 NW2d 536 (1971), citing

1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 359. The frequently cited concurring opinion of Mr. Justice Souris in *Durant v Stahlin,* 375 Mich 628, 655; 135 NW2d 392 (1965), adopted the following admonition against the intemperate use of the summary judgment procedure:

"We take this occasion to suggest that trial judges should exercise great care in granting motions for summary judgment. A litigant has a right to a trial where there is the slightest doubt as to the facts, and a denial of that right is reviewable; but refusal to grant a summary judgment is not reviewable. Such a judgment, wisely used, is a praiseworthy time-saving device. But, although prompt dispatch of judicial business is a virtue, it is neither the sole nor the primary purpose for which courts have been established. Denial of a trial on disputed facts is worse than delay. * * * The district courts would do well to note that time has often been lost by reversals of summary judgments improperly entered." *Doehler Metal Furniture Co v United States,* 149 F2d 130, 135 (CA 2, 1945).

In the instant case, final determination of the respective rights of each of the parties to the property discovered by plaintiff John Doe rests primarily upon both the weight and the credibility which the trial court assigns to the testimony of defendant Powell. Regardless of which legal theory the court chooses to apply to the facts of this case, if defendant Powell's assertion of ownership were accepted by the trier of fact, he would prevail. Section 7 (MCL 434.7; MSA 18.707) of the lost goods act provides that restitution must be made to the "owner or person entitled to the possession" if timely demand is made. Similarly, the code of escheats, MCL 567.11, *et seq.;* MSA 26.1053(1), *et seq.* would clearly be inapplicable to the instant

case if defendant Powell's testimony were adopted by the trier of fact. In addition, according to the weight of authority brought to this Court's attention, Black's Law Dictionary (4th ed), p 1673, correctly states the common law definition of treasure-trove as: "Money or coin, gold, silver, plate or bullion found hidden in the earth or other private place, *the owner thereof being unknown."* (Emphasis added.)

Should the trier of fact choose not to accept any part of Powell's testimony, it is clear that one or more of the other claimants might prevail on their several claims. Therefore, the weight and credibility to be assigned defendant Powell's testimony is a material factor in the instant dispute. "The courts are liberal in finding that a 'genuine issue' does indeed exist" under these circumstances, *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973), and authority for the proposition that summary judgment will not lie where material issues of fact are at issue is voluminous. See *Bilicki v W T Grant Co,* 382 Mich 319, 326; 170 NW2d 30 (1969), and cases cited therein. In *Brown v Pointer,* 390 Mich 346, 354; 212 NW2d 201 (1973), the Supreme Court held that where the credibility of a movant is challenged, a "genuine issue" for determination by the trier of fact is created.

The language of the Court in *Arber v Stahlin,* 382 Mich 300, 308; 170 NW2d 45 (1969), seems particularly apposite to the case at hand: "As we have repeatedly emphasized, summary judgment is not available whenever a presented issue of material fact turns upon the credibility of an affiant or witness whose deposition has been taken." See also opinion of Mr. Justice SOURIS in *Durant v Stahlin, supra.*

As the disputed fact of defendant Powell's ownership of the property discovered by plaintiff John Doe has such important ramifications upon the legal rights of the parties, we find it appropriate that this matter be returned to the trial court in order that the weight and credibility to be given his testimony may be determined in a trial on the merits. Should any part of his testimony be disbelieved, the court will be forced to make other determinations of fact, bearing especially upon the intent of the original "owner", which also should be made following a full trial.

The code of escheats, MCL 567.11, *et seq.;* MSA 26.1053(1), *et seq.,* gives the Attorney General power to intervene where property is subject to escheat due to failure of title to the property for one of the following reasons, MCL 567.14; MSA 26.1053(4): 1) death of the owner intestate with no known heirs; 2) owner's disappearance or absence from last known place of residence for a continuous period of seven years leaving no known heirs; and, 3) owner's abandonment of the property. Since ownership of the subject property is a question of fact which has not yet been determined, as a matter of law, the Attorney General's standing to represent the state may not be denied. Although the state carries the burden of establishing its right to escheatable property, 30A CJS, Escheat, § 16(a), p 946, where ownership of the subject property is disputed and the court cannot say as a matter of law that the property is not subject to escheat, the Attorney General has standing to participate on behalf of the state.

Reversed and remanded for trial on the merits. Costs to await final determination.