MALE v GRAND RAPIDS EDUCATION ASSOCIATION

Docket No. 43290. Submitted February 6, 1980, at Grand Rapids.—
Decided July 22, 1980. Leave to appeal applied for.

David Male, a tenured teacher with the Grand Rapids public
school system, brought an action for declaratory judgment in
Kent Circuit Court seeking to have declared illegal a certain
assessment by the Grand Rapids Education Association made
as part of the association's dues for members and as part of the
financial responsibility fee for nonmembers. Plaintiff was not a
member of the Grand Rapids Education Association (GREA),
the exclusive bargaining agent for the teachers employed by
the Grand Rapids school system for kindergarten through
twelfth grade; rather, plaintiff payed a yearly financial respon-
sibility fee to GREA equivalent to the dues by GREA members.
In 1975, GREA informed plaintiff that for the 1975-1976 school
year his financial responsibility fee would include a ten dollar
assessment for a mandatory teacher assistance program fund
(TAP Fund). Because plaintiff believed that the TAP Fund was
intended to aid teachers in illegal strikes, plaintiff refused to
pay that portion of his financial responsibility fee that repre-
sented the TAP Fund assessment. Pursuant to the collective
bargaining assessment, plaintiff's employment could be termi-
nated by reason of his failure to pay his financial responsibility
fee in full.

In addition to seeking to have the TAP Fund assessment

REFERENCES FOR POINTS IN HEADNOTES
[1, 10] 48A Am Jur 2d, Labor and Labor Relations §§ 1771, 2034.
[2] 59 Am Jur 2d, Parties § 54 *et seq.*
[3, 11] 59 Am Jur 2d, Parties § 58 *et seq.*
[4] 59 Am Jur 2d, Parties §§ 63-65, 71-74.
[5] 59 Am Jur 2d, Parties § 85.
[6] 59 Am Jur 2d, Parties § 91.
    Attorney's fees in class actions. 38 ALR3d 1384.
[7] 59 Am Jur 2d, Parties §§ 51 *et seq.,* 91.
    Attorney's fees in class actions. 38 ALR3d 1384.
[8] 73 Am Jur 2d, Summary Judgment §§ 1, 26, 27.
[9] 48 Am Jur 2d, Labor and Labor Relations § 259 *et seq.*
[12] 59 Am Jur 2d, Parties § 54.

declared illegal, plaintiff sought in his circuit court action against GREA, the Michigan Education Association and the Board of Education for the City of Grand Rapids to have his threatened discharge from employment declared illegal and to have his action declared to be a class action for the purpose of securing the refund of TAP Fund assessment for all those persons who were required to pay the same, including GREA members. Cross motions for summary judgment were filed. The trial court, John T. Letts, Jr., held that the TAP Fund assessment furnished support to illegal strikes and was thus illegal and that the plaintiff's threatened discharge for nonpayment to that fund was likewise illegal. The circuit court refused to certify plaintiff's action as a class action and denied plaintiff's requested award of attorney fees. Defendants GREA and the Michigan Education Association appeal. Plaintiff cross-appeals. *Held:*

1. The TAP Fund, by assisting teachers who were not employed by reason of an illegal public teachers' strike, constitutes an illegal strike fund. Being an illegal strike fund, plaintiff teacher was not obligated to pay the assessment for that fund and could not be discharged from his employment for his nonpayment of that portion of his fee that represented his contribution to the illegal fund.

2. In Michigan, a class action may be maintained only when it is shown that: (1) there is an identifiable class; (2) the number of persons in that class is so large that it would be impracticable to bring them all before the court; (3) the person seeking to represent the class is a member of the class; (4) the interests of the class are adequately represented; (5) the rights sought to be enforced are several; (6) there is a common question of law or fact affecting the several rights; (7) a common relief is being sought; and (8) the maintenance of the case as a class action serves the convenient administration of justice.

3. Plaintiff, to the extent that he seeks the return of the illegal TAP Fund assessments, is a member of the class of all those who paid those assessments, including members of GREA. In the absence of proof to the contrary, it will be assumed that plaintiff would adequately represent the rights of the class through qualified counsel.

4. Because the class in question is potentially composed of 1800 members, the question to be resolved is common, the computation of any damages for each member of the class is simple and the recovery for each member is small, a class action serves the convenient administration of justice. The

mere failure of other members of a class to intervene in a class action is no reason to disqualify the plaintiff from being the class representative.

5. Attorney fees, while not normally awardable, are awardable in class actions. Such attorney fees may be awarded in class actions involving the return of an illegal union assessment and such award may be recovered from the fund created by the illegal assessments.

6. The question of whether plaintiff should be allowed to maintain his action as a class action should be determined on the basis of the number of members of the class who desire to be included in the class. The matter, therefore, is remanded to the circuit court where adequate time shall be granted to permit other members of the class to opt into the action. The trial court shall determine, in accordance with the principles of equity, whether plaintiff should be awarded reasonable attorney fees, such determination depending upon the nature and extent of the benefit conferred upon the intervening class members.

Remanded.

DANHOF, C.J., concurs with the conclusion that plaintiff could not be discharged from his employment for his failure to pay the disputed assessment; however, he would not reach that conclusion on the basis that the TAP Fund was an illegal strike fund, rather he would hold that, since the TAP Fund is outside the required functions of a union, the TAP Fund assessment is not a proper fee to be included in a financial responsibility fee. He would further hold that plaintiff is not a member of the same class as GREA members and, thus, could not properly bring a class action on their behalf.

### OPINION OF THE COURT

1. LABOR RELATIONS — PUBLIC EMPLOYEES — TEACHER ASSOCIATIONS — ILLEGAL STRIKES — ASSESSMENTS FOR SUPPORTING ILLEGAL STRIKES — VALIDITY — ENFORCEMENT OF UNLAWFUL UNION ASSESSMENT.

A fund maintained by an educational association for the purpose of assisting public school teachers who are on strike tends to encourage strikes which, by statute, are prohibited; accordingly, mandatory assessments for such a fund are illegal and teachers cannot be compelled, under threat of discharge pursuant to a collective bargaining agreement, to pay such an assessment as part of a mandatory financial responsibility fee.

2. ACTIONS — CLASS ACTIONS — REQUIREMENTS TO MAINTAIN A CLASS
ACTION — COURT RULES.

    A class action may be maintained pursuant to the Michigan court
rules only when it is shown that: (1) there is an identifiable
class; (2) the number of persons in that class is so large that it
would be impracticable to bring them all before the court; (3)
the person seeking to represent the class is a member of the
class; (4) the interests of the class are adequately represented;
(5) the rights sought to be enforced are several; (6) there is a
common question of law or fact affecting the several rights; (7)
a common relief is sought; and (8) the maintenance of the case
as a class action serves the convenient administration of justice
(GCR 1963, 208.1[3]).

3. ACTIONS — CLASS ACTIONS — MEMBERSHIP IN CLASS — ADEQUACY
OF REPRESENTATION OF CLASS INTERESTS.

    A school teacher who has chosen not to join a teacher's union but
rather pay a financial responsibility fee in lieu of union dues is,
for the purpose of bringing a class action testing the legality of
mandatory strike fund payments, a member of the same class
as the teachers who joined the union and, in the absence of
proof to the contrary, will be assumed to adequately represent
the rights of the class through qualified counsel.

4. ACTIONS — CLASS ACTIONS — CONVENIENT ADMINISTRATION OF
JUSTICE.

    A class action serves the convenient administration of justice
where the class is potentially composed of 1800 members, the
common question is the legality of certain union dues and the
computation of damages as to each member of the class is
simple; a class action is particularly suitable where the recov-
ery for each member of the class is small.

5. ACTIONS — CLASS ACTIONS — INTERVENTION OF OTHER CLASS MEM-
BERS — REPRESENTATION OF THE CLASS.

    The mere failure of other members of a class to intervene in a
class action is no reason to disqualify the person or persons
bringing a class action from being the class representative or
representatives.

6. ACTIONS — CLASS ACTIONS — ATTORNEY FEES.

    Attorney fees, while not awardable unless expressly authorized
by statute or court rule, are awardable in class actions; where a
class action involves the refunding of illegal union assessments,
an award of reasonable attorney fees from the fund created by
those assessments is permissible.

7. ACTIONS — CLASS ACTIONS — MEMBERS INCLUDED IN THE CLASS —
NUMBERS IN THE CLASS — ATTORNEY FEES.

The question whether a spurious class action should be allowed
or dismissed is to be determined on the basis of the number of
class members who desire to be included in the class; the extent
to which reasonable attorney fees may be awarded depends
upon the nature and extent of the benefit conferred upon the
intervening class members.

CONCURRENCE IN PART AND DISSENT IN PART BY DANHOF, C.J.

8. JUDGMENTS — SUMMARY JUDGMENTS — DISPUTED QUESTION OF FACT.

*It is improper to grant a summary judgment holding that certain
mandatory assessments made against a public school teacher
by a teachers' association are illegal on the basis that the
assessments are an illegal strike fund where there was a
disputed question of fact as to whether the fund for which the
assessments were made was, in fact, exclusively a strike fund
(GCR 1963, 117.2[3]).*

9. LABOR RELATIONS — UNIONS — REQUIRED UNION FUNCTIONS —
RIGHT OF UNIONS TO FINANCIAL SUPPORT — EXTENT OF SUP-
PORT.

*The right of a labor organization to compel support is limited to
the extent that the assessments made are justified by the costs
of the collective bargaining, contract administration and griev-
ance adjustment services which the labor organization is re-
quired to provide to all persons in its bargaining unit.*

10. LABOR RELATIONS — UNIONS — UNION ASSESSMENTS — USE OF
ASSESSMENTS — BURDEN OF PROOF.

*Payment by a public school teacher of an assessment for a fund
used to assist teachers who are without employment may not
be compelled by a teachers' association where it is alleged that
the fund is an illegal strike fund and the association, while not
admitting that the entire assessment is to be used to support
illegal strikes, fails to show that some measurable portion of
the fund is to be applied to proper purposes; the burden of
proving the proper use of a mandatory union assessment rests
upon a labor organization seeking enforcement of an assess-
ment.*

11. ACTIONS — CLASS ACTIONS — MEMBERSHIP OF A CLASS — INTER-
ESTS OF A CLASS — REPRESENTATION OF A CLASS.

*A person who is not a member of a union but rather pays to the
union a financial responsibility fee in lieu of union dues is not
a proper party to bring on behalf of all persons paying a union*

*assessment, including union members, a class action challeng-
ing the validity of the union assessment, since there can be no
presumption that a person who is not a union member has the
same interest in the elimination of the assessment as those
persons who joined the union; the interests of a person who is
not a union member are not sufficiently similar to the interests
of union members with respect to union assessments so as to
enable the nonunion person to adequately represent the union
members in a class action; indeed, such a person's interests
may be antagonistic to the interests of the class he seeks to
represent.*

12. ACTIONS — CLASS ACTIONS — APPROPRIATENESS OF REPRESENTA-
TION OF A CLASS.

*The class action device may not be used to permit a person to
tamper with the rights of others where there is no benefit to
the person seeking to bring the class action.*

*Miller, Johnson, Snell & Cummiskey* (by *John G.
March* and *Thomas P. Sarb),* for plaintiff.

*Foster, Swift, Collins & Coey, P.C.* (by *James A.
White* and *Karen Bush Schneider),* for Grand Rap-
ids Education Association and Michigan Education
Association.

Before: DANHOF, C.J., and R. B. BURNS and MAC-
KENZIE, JJ.

R. B. BURNS, J. Plaintiff, David Male, is a certi-
fied tenured teacher employed by the Grand Rap-
ids public school system. In the course of his
employment, plaintiff pays a yearly financial re-
sponsibility fee which is assessed by defendant
Grand Rapids Education Association (GREA).[1] De-
fendant GREA, an affiliate of defendant Michigan
Education Association (MEA), is the exclusive bar-
gaining representative for teachers employed by
the Grand Rapids school system for kindergarten

---

[1] The financial responsibility fee is the equivalent of the dues of the
GREA and is paid by any teacher who elects not to join the GREA.

through twelfth grade. In 1975, defendant GREA informed plaintiff that his financial responsibility fee for the 1975-1976 school year would include a ten-dollar assessment for a mandatory teacher assistance program fund (TAP Fund). Because plaintiff believed that the TAP Fund was intended to aid teachers who engaged in illegal strikes, plaintiff refused to pay the portion of his financial responsibility fee that represented the TAP Fund assessment.

Under the terms of the parties' collective bargaining agreement, if a teacher fails to pay the financial responsibility fee the teacher's employment will be terminated by the defendant Board of Education of the City of Grand Rapids. In March 1976, defendant GREA filed charges against plaintiff with the defendant Board of Education, seeking the discharge of plaintiff for his refusal to pay the TAP Fund assessment. The Board of Education, with the concurrence of plaintiff and defendants GREA and MEA, resolved not to hold a tenure hearing until the legality of the TAP Fund assessment was adjudicated.

This action for declaratory judgment was brought in the Kent County Circuit Court for a determination on the legality of the TAP Fund assessment.[2] The trial court held that the TAP

_____

[2] As summarized by the trial court, the plaintiff requested:

"[O]ne, a Declaratory Judgment that the strike fund assessment made for the purpose of supporting strikes by public employees is illegal and that plaintiff cannot be compelled under the threat of discharge to pay such an assessment or be discharged for refusing to pay it; two, a Declaratory Judgment that the strike fund assessment is not properly a part of the mandatory financial responsibility fee under the Collective Bargaining Agreement between defendants GREA and the Board of Education, and that plaintiff cannot be discharged for his refusal to pay that assessment; and three, a Judgment of this Court ordering defendant GREA to refund to all teachers in the Grand Rapids public school system the illegal strike fund assessments collected to date (the latter is in the role of a class action)."

Fund is a strike fund and that contributions to it, forced under threat of discharge, are illegal. The trial court denied a motion by plaintiff to certify the suit as a class action and later held that attorney fees were not awardable. Defendants GREA and MEA appeal the portion of the trial court's judgment declaring the TAP Fund an illegal strike fund, and plaintiff cross-appeals the court's refusal to certify the suit as a class action and the denial of attorney fees.

The trial court began its inquiry into the legality of mandatory TAP Fund assessments by noting the stated purpose of the fund which is:

"To provide direct assistance to teachers in the form of financial support if the employment has entirely disappeared or is temporarily unavailable either because of the concerted act of the employer or employees."

As observed by the court, the parties have stipulated that "[t]he Tap Fund may be used to assist public school teachers engaged in strikes against their public employers and has in fact been so used".

Based on the fact that the TAP Fund provides financial assistance to teachers engaged in strikes against their public employers, the trial court held that the fund is a strike fund. And, based on the fact that strikes by public employees, including public school teachers, are prohibited under Michigan law, MCL 423.202; MSA 17.455(2),[3] the court further found that mandatory assessments for this strike fund are illegal and teachers cannot be compelled under threat of discharge to pay such

[3] See, *Lamphere Schools v Lamphere Federation of Teachers,* 400 Mich 104; 252 NW2d 818 (1977), and *Holland School District v Holland Education Ass'n,* 380 Mich 314; 157 NW2d 206 (1968).

assessments as part of the financial responsibility fee.[4]

We agree with the holding of the trial court and find no merit in defendants' argument that the TAP Fund furnishes support only to the teachers and not to strikes. As the trial court noted, the mere existence and availability of the fund is a powerful force and it is only logical to assume that teachers will be more likely to strike where there is strong financial backing.

Further, the public employment relations act, MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* explicitly prohibits the authorization of strikes by persons in authority. MCL 423.203; MSA 17.455(3), provides in part:

"No person exercising any authority, supervision or direction over any public employee shall have the power to authorize, approve or consent to a strike by public employees, and such person shall not authorize, approve or consent to such strike."

As the system presently exists, GREA has the power, under the collective bargaining agreement, to compel the Board of Education to discharge teachers who refuse to support the TAP Fund. As the fund itself supports and instigates teacher strikes, enforcement of mandatory contributions to the fund is tantamount to approval of such activities in direct contravention of the act.

The trial court, therefore, did not err in holding that GREA could not enforce mandatory assessments for the TAP Fund.

Though the trial court found that payment of the TAP Fund assessment cannot be compelled under threat of discharge, the court refused plain-

---

[4] The court's determination applies equally to union dues which are collected from the teacher members of defendant GREA.

tiff's request to order the refund of all the assessments collected by GREA. Plaintiff's request was made in the form of a petition to certify the action as a class action. The court's refusal was based on two grounds: (1) no affidavits had been submitted joining other persons to the action, and (2) before April 1975, contributions to the TAP Fund were made on a voluntary basis. The court stated that it "hesitates to render an opinion in favor of those persons who have rendered no protest particularly on what they contributed on a voluntary basis".

Class actions are provided for in GCR 1963, 208, which states in part:

".1 If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may on behalf of all sue or be sued when the character of the right sought to be enforced for or against the class is

\* \* \*

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

In *Grigg v Michigan National Bank,* 405 Mich 148, 167; 274 NW2d 752 (1979), the Michigan Supreme Court delineated the requirements which must be met in order to maintain a class action pursuant to GCR 1963, 208.1(3):

"1. There must be an identifiable class;

2. The number of persons in the class must be so large that it would be impracticable to bring them all before the court;

"3. The person or persons seeking to represent the class must be members thereof;

"4. The interests of the class must be adequately represented;

"5. The right or rights sought to be enforced must be several;

"6. There must be a common question of law or fact affecting the several rights, and

"7. A common relief must be sought."

After a review of the record, we find that the present case meets all of the above-noted criteria, as well as the further requirement that the maintenance of the case as a class action must serve the "convenient administration of justice". *Griggs, supra,* 184.

In this action, the rights sought to be enforced are several, as each teacher has a separate claim to a refund of his assessment; there is a common question of law involved, the legality or illegality of the assessment; and common relief is sought in the form of a petition for declaratory judgment that the assessment is illegal.

It is undisputed that plaintiff is a member of the class whose interest he seeks to represent, however, defendants argue that a class action is inappropriate because only the seven or eight teachers who paid the assessment without joining GREA would be eligible to be members of the class. Defendants maintain that members of GREA, numbering approximately 1,813, should be assumed to have voluntarily paid the assessment by virtue of their voluntary association with GREA. We cannot conclude that support for illegal strike activities automatically follows voluntary association with GREA, and therefore we hold that all teachers in the bargaining unit would be eligible to join the class action. We also find that plaintiff will adequately represent the class, as there is no indication that plaintiff will not continue to pursue vigorously the rights of the class through qualified counsel.

The requirement that a class action be in accordance with the convenient administration of justice refers chiefly to the practical problems involved in conducting an action as a class action. See *Grigg, supra,* 184-189. Though the number of persons potentially in the class, approximately 1800, is too large to be conveniently joined by plaintiff, it is not too large to be managed by the court, as each member is known to defendants and is easily informed of the action. Moreover, the computation of damages is simple. Each member will be entitled to twenty dollars[5] (ten dollars for each of the two years that the mandatory assessment was collected from every teacher except plaintiff). The fact that each class member will only be entitled to a small recovery makes the action one particularly suited for being brought as a class action. *Bond v Ann Arbor School Dist,* 383 Mich 693; 178 NW2d 484 (1970).

Finally, we note the concern which the trial court expressed because no other members of the class had submitted affidavits and the reluctance of the trial court to render an order that required the refund of assessments to GREA members who have not protested the assessments and who had voluntarily made payments to the TAP Fund. These concerns are met by the fact that a class action brought under GCR 1963, 208.1(3) has been used as a permissive joinder device:

"On the basis of the foregoing, we concluded that the judgment in a spurious class action binds only those similarly situated individuals who affirmatively indicate to the court their desire to be included in the class (to 'opt in'). This insures maximum protection of the rights of the absent class members in the cases where they

_____

[5] See *infra* for the effect that an award of reasonable attorney fees might have on this sum.

need it most—cases in which the rights involved are not common but several and distinct in nature and in which the only connection between the members is a common question of law or fact." *Grigg, supra,* 174.

Since this litigation would be conducted as a form of permissive joinder of parties, the fact that some members may want to allow GREA to keep their share of the assessment is not significant. Only those members who affirmatively opt into the action shall be bound by it. And, as stated by this Court in *Adams v Wayne County Treasurer,* 71 Mich App 275, 285; 248 NW2d 232 (1976), "merely because other members of the class have failed to intervene is no reason to disqualify the present named plaintiffs as class representatives".

Absent an exception, attorney fees are not awardable unless expressly authorized by statute or court rule. *State Farm Mutual Automobile Ins Co v Allen,* 50 Mich App 71; 212 NW2d 821 (1973). The trial court's decision not to award attorney fees was based on its finding that the "common fund" exception was not applicable in that plaintiff has sought to prevent the forced accumulation of assets rather than having sought to protect a pool of assets from depletion. Since we have held that the mandatory assessments were illegal and that a refund of the assessments is appropriate, an award of reasonable attorney fees from the TAP Fund is permissible. In *Bond, supra,* the Supreme Court awarded attorney fees in a situation very closely resembling the present one. The Supreme Court stated:

"One of the reasons for requiring a refund of the fees in this case is to provide a fund from which can be paid a reasonable attorney fee to the attorneys for plaintiffs. * * *

"We are not unmindful of the fact that the fees which were exacted were used by defendant or of the relative smallness of each fee. Nevertheless, where the parties are arrayed in a lawsuit, as here, in which both sides undoubtedly conceive themselves to be proceeding in the public interest, some balance must be struck so that the side prevailing is not compelled to bear the burdensome costs of achieving a favorable decision." *Bond, supra,* 704-705.

In *Grigg, supra,* the Supreme Court recognized that the trial court may allow or dismiss the class portion of a suit depending upon the number of class members who opt in and that this will affect the award of attorney fees.

"The plaintiff in the case at bar has only requested an award of 'reasonable' attorney fees. Reasonableness of the fees would depend primarily upon the amount of time the attorneys spent on the case and upon the nature and extent of the benefit conferred upon the intervening class members. Such a fee, plus costs, would be payable from the proceeds of the judgment prior to computation for distribution." *Grigg, supra,* 192.

Accordingly, we remand to the trial court with the following instructions:

1) The court shall set a reasonable time period within which class members must opt in order to be included in the class;

2) The court may in its discretion order that plaintiff, at his expense, issue such notice as the court may direct;

3) The court shall determine whether, according to the principles of equity, plaintiff should be awarded reasonable attorney fees.

MACKENZIE, J., concurred.

DANHOF, C.J., *(concurring in part, dissenting in part)*. The majority has followed the lead of the complaint and the trial court in concluding that the TAP fund maintained by the defendant unions is "illegal". Reasoning from this premise, my colleagues have joined the trial court to declare that no member of GREA's bargaining unit may be "compelled" to contribute to the fund and have reversed the trial court by holding that the plaintiff may maintain a class action on behalf of all bargaining unit members. The opinion apparently holds that the unions must refund TAP assessments to any teacher who "opts in" to the class action. The majority has made a finding that the TAP fund is maintained solely for the purpose of mounting economic strikes against school districts and has utilized that factual proposition as the basis of a broad condemnation of the unions' TAP activities. I believe that this is the product of a fundamental oversight with regard to the posture in which the case has come to judgment, and thus cannot join my colleagues.

This case was decided in the lower court on cross motions for summary judgment brought pursuant to GCR 1963, 117.2(3). The record upon which those motions were decided is comprised of the pleadings, affidavits, admissions, answers to interrogatories, and a stipulation of facts. Throughout the litigation, the plaintiff has insisted that the TAP fund is a "strike fund", held for the sole purpose of helping teachers to weather their participation in illegal strikes. With equal steadfastness, the unions have maintained that the support of striking teachers is only one of the fund's designated purposes and that its operating guidelines contemplate several permissible applications, most notably the financial support of teach-

ers who are idled by lockouts or strikes by other school employees. The parties have so shaped their litigation that the destination and purpose of TAP dollars is the major contested issue between them.

However strongly the unions' literature suggests that the Teachers Assistance Program is nothing more than a strike fund, the unions' unrelenting denial that this is true makes it improper to conclude at this stage of the litigation that the plaintiff's characterization is correct. By uncritically treating the TAP fund as a "strike fund" the majority and the trial court have in effect resolved that which they believe to be a significant factual dispute in a summary judgment proceeding designed merely to determine whether such a dispute exists. See *Rizzo v Kretschmer,* 389 Mich 363; 207 NW2d 316 (1973), *Bilicki v W T Grant Co,* 382 Mich 319; 170 NW2d 30 (1969). I believe that a proper consideration of the plaintiff's motion for summary judgment must accept as true the unions' assertions that while TAP money has been spent to support striking teachers it is also available for completely legal purposes. Recognizing this discipline, I am unable to join the majority in resolving this case on the efficient but uncritical premise that the TAP fund is "illegal". What is demanded by this appeal is a more detailed examination of the real disputes involved and the rights of the parties, including those of the defendant unions.

The interest and rights of the plaintiff are easily recognized: He has rights in his employment, a right to decline union membership, and a right to withhold his support from an organization to which he is hostile. In the face of these important individual rights, it is too easy to overlook the fact that the unions are expressions of the rights con-

ferred on their members by the public employment relations act and the First Amendment. See MCL 423.209; MSA 17.455(9), and *Thomas v Collins,* 323 US 516; 65 S Ct 315; 89 L Ed 430 (1945), *Beilan v Board of Public Education of Philadelphia,* 357 US 399; 78 S Ct 1317; 2 L Ed 2d 1414 (1958). Until some abuse is shown, the right of GREA and MEA members to form and support their organizations is at least the equal of the plaintiff's right to shun them. However difficult to attain, our task in this action is simply stated to be the protection of the rights of each party with the smallest possible damage to the rights of the others. The logical place to start is the actual dispute between the plaintiff and the defendants that is the foundation of his demand for declaratory judgment.

That dispute is of relatively narrow dimensions. Claiming that the plaintiff must support it with a "financial responsibility fee" equal to the dues it assesses its members, GREA has sought to oust the plaintiff from his employment, applying to this purpose the agency shop agreement it has made with the plaintiff's employer. By the terms of the agreement this is proper, for the plaintiff has refused to pay the fee in full. He claims that he cannot be compelled to pay the $10 portion of the annual fee that the unions reserve to their TAP fund. If it appears that the plaintiff need not pay his $10 yearly TAP assessment, his rights will be fully protected and the whole of his dispute with the unions will be resolved. The plaintiff's obligation to the TAP fund may be measured without reference to the "legality" of the fund itself, by applying the principles set forth in *Abood v Detroit Board of Education,* 431 US 209; 97 S Ct 1782; 52 L Ed 2d 261 (1977).

In *Abood,* the Court observed that compulsory

support of an exclusive collective bargaining representative is virtually certain to have an adverse impact on employees' First Amendment freedoms:

"To compel employees financially to support their collective-bargaining representative has an impact upon their First Amendment interests. An employee may very well have ideological objections to a wide variety of activities undertaken by the union in its role as exclusive representative. His moral or religious views about the desirability of abortion may not square with the union's policy in negotiating a medical benefits plan. One individual might disagree with a union policy of negotiating limits on the right to strike, believing that to be the road to serfdom for the working class, while another might have economic or political objections to unionism itself. An employee might object to the union's wage policy because it violates guidelines designed to limit inflation, or might object to the union's seeking a clause in the collective-bargaining agreement proscribing racial discrimination. The examples could be multiplied. To be required to help finance the union as a collective-bargaining agent might well be thought, therefore, to interfere in some way with an employee's freedom to associate for the advancement of ideas, or to refrain from doing so, as he sees fit. But the judgment clearly made in *Hanson [Railway Employees' Dept v Hanson,* 351 US 225; 76 S Ct 714; 100 L Ed 1112 (1956)] and *Street* is that such interference as exists is constitutionally justified by the legislative assessment of the important contribution of the union shop to the system of labor relations established by Congress. 'The furtherance of the common cause leaves some leeway for the leadership of the group. As long as they act to promote the cause which justified bringing the group together, the individual cannot withdraw his financial support merely because he disagrees with the group's strategy. If that were allowed, we would be reversing the *Hanson* case, *sub silentio.' Machinists v Street,* 367 US [740], at 778 [81 S Ct 1784, 6 L Ed 2d 1141] (Douglas, J., concurring)." (Footnote omitted.) 431 US at 222-223.

"The cause which [justifies] bringing the group together" is explained by the Court to be the employees' collective desire for the services of a labor organization in "collective bargaining, contract administration, and grievance adjustment". 431 US at 225-226.

The principles developed in *Abood* compel the conclusion that, with employees' personal First Amendment rights at stake, a labor representative's power to compel the support of would-be "free riders" is justified only by the collective bargaining, contract administration and grievance adjustment services it is required to provide to all members of its bargaining unit. See *International Ass'n of Machinists v Street,* 367 US 740; 81 S Ct 1784; 6 L Ed 2d 1141 (1961). A representative's application to other purposes of money extracted from an unwilling employee is an abuse of the employee's rights and exceeds the power that the government may properly bestow upon the representative. Our statute plainly declares that economic strikes are not a legitimate incident of collective bargaining in the public sector. MCL 423.202; MSA 17.455(2). It follows that a labor organization may not compel a dissenting public employee who is not a member of the organization to support that activity.

The burden of pleading and proving what part of a mandatory assessment is to be applied to proper uses rests with the labor organization that is seeking to enforce the assessment. See *Brotherhood of Railway & Steamship Clerks, Freight Handlers, Express & Station Employees v Allen,* 373 US 113; 83 S Ct 1158; 10 L Ed 2d 235 (1963). While the unions in the case at bar have not admitted that the entire TAP assessment is to be used to support illegal strikes, neither have they at-

tempted to show that some measured part of it is destined for proper applications. In the context of this case, it is proper to assume that the entire TAP assessment demanded of the plaintiff is an exaction for the support of teacher strikes. I thus agree with the majority that the plaintiff may not be compelled to pay the TAP assessment, and would join them to affirm the summary judgment declaring that the agency shop provision of the collective bargaining agreement may not be used to enforce the plaintiff's contribution to the TAP fund.

The complaint in this action also demanded a declaration that no member of the Grand Rapids bargaining unit may be "compelled" to make TAP contribution and sought to recover of the unions all the contributions that have been made. The "common fund" thus generated was to be first applied to the payment of the plaintiff's attorney fees. The plaintiff presented these demands as a request to proceed as the representative of a class comprised of all Grand Rapids teachers. From the trial court or the majority, the plaintiff has received all of this relief, provided only that a sufficient number of potential class members "opt in" to the action for restoration of the money.

It is in the resolution of the class action issue that the majority's treatment of the TAP fund as a tangible "illegal" entity most confounds the case and disables analysis. The unions' placement of the TAP assessments in an identifiable fund has aided the resolution of the plaintiff's own confrontation with them. However, this case otherwise presents nothing more than the unions' admitted intent to use a portion of their resources for purposes that are illegal. Our real concerns with the fund and the unions' designs for it are not that

they exist, but that improper action might ensue. In such an event, the legality of the expenditure may be evaluated, perhaps, if the strikers to whom assistance is given are acting in violation of an injunction, in contempt proceedings against the disbursing union. I cannot agree, however, that a labor organization's possession of its own money, even with a more or less settled intent to apply it in the future to illegal ends, is an act of any independent legal significance.

The majority's belief that the TAP fund is simply "illegal" has led it to hold that any contributor may obtain relief against it and that the plaintiff, a noncontributor, may pursue a class action on behalf of all. Bridging the narrow gap from premise to conclusion is the observation that membership in the union does not, in any individual's case, imply "support for illegal strike activities". Despite its obvious truth, this notion ignores the fact that any union member so opposed to the unions' policies may relinquish his membership and join the plaintiff in the haven *Abood* has created for dissenters. More than 99% of the teachers in this bargaining unit are union members, and the record does not show that any have defected in response to the creation of the teacher assistance program. These 1800 putative dissenters continue to support the unions—which are defendants not plaintiffs.

Meaningful consideration of the class action claim must begin with a hard look at the legal and associational standing of the potential class members and the unions, for the class action prerequisites set forth in *Grigg v Michigan National Bank,* 405 Mich 148; 274 NW2d 752 (1979), cannot be applied in a legal vacuum. Plaintiff Male and his fellow nonunion teachers are financially tied to

the defendant unions only by the agency shop arrangement contained in the collective bargaining agreement under which they work. The unions' power under that statutorily-authorized agreement is limited by *Abood, supra.* To the unions' demand for that portion of the plaintiff's "financial responsibility fee" that is destined for use in the teacher assistance program or other purposes not related to the unions' duties to the plaintiff, *Abood* is a complete defense.

Against those of their members who would dissent by withholding dues, however, the unions' power is not so limited. My brief research has disclosed that unions may assess dues and make rules to govern their members, and may enforce those decisions by suspension of union privileges, expulsion, and other sanctions. See *Barker Painting Co v Brotherhood of Painters, Decorators, and Paperhangers of America,* 57 US App DC 322; 23 F2d 743 (1927), *cert den,* 276 US 631; 48 S Ct 324; 72 L Ed 741 (1927), *National Labor Relations Board v Allis-Chalmers Manufacturing Co,* 388 US 175; 87 S Ct 2001; 18 L Ed 2d 1123 (1967), and *Scofield v National Labor Relations Board,* 394 US 423; 89 S Ct 1154; 22 L Ed 2d 385 (1969). Dissenting members endure the decisions of the whole membership because they prefer that endurance to resignation from their organization. *Abood's* protections are not available to persons who would also retain their union cards. Whatever we may surmise regarding individual members' opinions of the teachers assistance program, we must assume that the operation of the program reflects the real support of most union members and, at least, a begrudging acceptance of those remaining. Members of the latter group have at least concluded that their best interests lie with the unions and its

programs. Even such a reluctant choice is protected by statute and constitution, and we may not ignore it for presumed lack of enthusiasm.

One of the *Grigg* criteria for allowing a litigant to proceed on behalf of a class is that "[t]he interests of the class [will] be adequately represented". 405 Mich 148, 167. This means more than mere competence and enthusiasm, whether that enthusiasm be generated by ideology or the promise of attorney fees from the "common fund" waiting at the end of the litigation. It is clear to me that even in a "permissive joinder" or "spurious" class action, the would-be representative must have a personal legal interest in the issues he seeks to litigate for the class. "[W]hen it appears that the [representative] plaintiffs will not be the present or future beneficiaries of their action, the class action device is being abused." *Grigg v Robinson Furniture Co,* 78 Mich App 712, 731; 260 NW2d 898 (1977). I am unable to discern what benefit will befall the plaintiff from this attack on the relationship between the unions and their membership. I am also unable to discover a cause of action that Mr. Male could successfully assert against the union to compel it to modify its dues schedule or to give money to its members. This Court has held that "'a plaintiff may not accomplish by class representation that which he cannot assert (as) a cause of action in individual litigation.'" *Stutelberg v Practical Management Co,* 70 Mich App 325, 341; 245 NW2d 737, *lv den* 398 Mich 804 (1976).

The majority has also held that the plaintiff is a member of the class he seeks to represent, a related class action prerequisite set forth in *Grigg v Michigan National Bank, supra.* If the TAP fund were simply "illegal" as to all persons, this might

be true. However, in light of the legal issues involved, the plaintiff's claim to class membership appears less substantial to me than it does to my colleagues. In fact, the plaintiff is seeking to represent two classes: one comprised of himself and perhaps the other nonunion teachers, and the other comprised of all those teachers who, for reasons we should not examine or evaluate, continue to support the unions with their membership. The plaintiff seeks to attack an action of the organizations that his would-be class members continue to support. If any litigants in this action may be deemed to hold interests common to the class of union members, it is the unions themselves. See *Gray v Reuther,* 99 F Supp 992 (ED Mich, 1951), *aff'd* 201 F2d 54 (CA 6, 1952), and *Giordini v Radio Corporation of America,* 183 F2d 558 (CA 3, 1950).

A class litigant should not be allowed to "represent" two classes with significant different legal interests or a class to whose interests he is antagonistic. See *State v Laramie Rivers Co,* 59 Wyo 9; 136 P2d 487 (1943), *Shulman v Ritzenberg,* 47 FRD 202 (D DC, 1969). This proposition has been differently formulated in a holding that "class members" whose interests are at war with their "representative" are not members at all. *Weeks v Bareco Oil Co,* 125 F2d 84 (CA 7, 1941). I believe that it is improper to inquire whether a representative belongs to his class without also asking whether his membership is the product of his legal position or merely of his litigational objectives.

The adequate representation and class membership concepts are grounded in the same fundamental considerations that deny standing to sue to persons who have suffered no injury at the hands of their defendants, *Inglis v Public School Employ-*

*ees Retirement Board,* 374 Mich 10; 131 NW2d 54 (1964), and require an "actual dispute" as a condition for declaratory relief, GCR 1963, 521.1, *Shavers v Attorney General,* 402 Mich 554; 267 NW2d 72 (1978). It is simply not the policy of our courts to open their doors to persons seeking to tamper with others' rights to no benefit of their own. The advisory opinion cautiously authorized by Const 1963, art 3, § 8 is our state's only exception to the principle that cases are not to be decided merely for the sake of precedent. The class action device must not allow avoidance of that principle. *Cf., Dee-El Garage, Inc v Korzen,* 53 Ill 2d 1; 289 NE2d 431 (1972).

I believe that the plaintiff's attempt to "condemn" a sum of money in which he has no interest on behalf of a class comprised almost exclusively of persons who do have an interest and who apparently are satisfied to leave it untouched is an abuse of the class action device. I would deny him leave to engage in that adventure. Litigation of the members' rights against their unions should await the advent of a representative who is actually within that class of potential plaintiffs.

I would affirm the summary judgment only with respect to the plaintiff's personal dispute with the defendants.